### PROSSER v. FIRST NAT. BANK OF DEL RIO.

(Court of Civil Appeals of Texas. Feb. 1, 1911. Rehearing Denied March 1, 1911.)

1. APPEAL AND ERROR (§ 916*)—REVIEW—PRESUMPTIONS—QUESTIONS NOT RULED ON AT TRIAL.

Where exceptions to plaintiff's petitions were not presented to nor acted on by the trial court, it must be assumed on appeal that the petitions stated a cause of action.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3702; Dec. Dig. § 916.*]

2. BANKS AND BANKING (§ 153*)—SPECIAL DEPOSITS—CONVERSION BY BANK.

Plaintiff agreed to loan M. $2,000 to pay the balance of the price of certain land, M. agreeing to deposit the amount in defendant bank as a special deposit, and to use the same only to pay for the land, and to give plaintiff a lien thereon as soon as the title was transferred. The money was deposited by M. in defendant bank to the credit of an account styled "Henry I. Moore, special," but the bank had no knowledge of the agreement between plaintiff and M., M. having overdrawn his general account, the amount of the special deposit, under agreement between M. and the bank, was transferred to his general account, and checked out, and not applied to the purchase price of the land. *Held*, that the style of the deposit was insufficient to put the bank on inquiry, and that its acts as to such deposit were not a conversion thereof as against plaintiff.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 483–501; Dec. Dig. § 153.*]

---

3. LIMITATION OF ACTIONS (§ 100*)—ACTIONS FOR RECOVERY OF SPECIAL DEPOSITS.

Where plaintiff could have ascertained an alleged conversion of a special deposit by the bank by reasonable diligence within six months after plaintiff had let the depositor have the money under a special agreement, but plaintiff took no steps to enforce any alleged rights as against the bank for more than two years after the conversion, if any occurred, his rights, if any, as against the bank, were barred by the two-year statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 490; Dec. Dig. § 100.*]

4. LIMITATION OF ACTIONS (§ 100*)—SUSPENSION—FRAUD.

Neither fraud alone nor ignorance of its existence will suspend the running of limitations, but ignorance of the facts to effect such result must be attended with such concealment of the fraud as will prevent its discovery by reasonable diligence.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 480, 481; Dec. Dig. § 100.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Action by R. W. Prosser against the First National Bank of Del Rio. Judgment for defendant, and plaintiff appeals. Affirmed.

C. C. Clamp and Seth S. Searcy, for appellant. Walter Gillis and Clark & Bliss, for appellee.

NEILL, J. This suit was brought by R. W. Prosser against Henry I. Moore and the First National Bank of Del Rio to recover the sum of $2,000. After the defendants answered, the plaintiff on August 16, 1905, filed his first amended original petition, in which he alleged, substantially: That on August 16, 1905, Henry I. Moore contracted to purchase from one Ellis certain property situated in the city of Del Rio, agreeing to pay $3,000 for the same. That Moore had paid his vendor $500 of the purchase price, and would pay him further to the extent of a like amount, but needed $2,000 more in order to obtain a clear title to the property. That on October 16, 1905, Moore, being desirous of liquidating said indebtedness of $2,000, procured from the plaintiff such sum, which he advanced Moore for that purpose, with the understanding that Prosser was to be secured in its payment by a valid lien on the property until the money so advanced was repaid. That, Ellis being a resident of a different part of the state, it was understood between all the parties that the title papers, deeds, and all instruments in writing necessary to close said transaction between him and Moore should be delivered to and pass through the defendant bank, which was fully advised of the nature of the understanding between Prosser, Moore, and Ellis. That when plaintiff advanced said sum of money Moore represented to him that the title had not been cleared up on said property, but that on the return of the title papers to the bank he would take up and close said deal

in accordance with the understanding between the parties. That the money so advanced Moore by plaintiff was by means of two checks for $1,000 each, which the former retained possession of for some time without cashing or depositing the same, awaiting the return to the bank of the deeds and title papers relating to the property. That the bank, knowing Moore held the checks, requested him to deposit them with it on special account for the purpose of discharging said indebtedness and closing the land transaction with Ellis. That Moore, then, at the instance and request of the bank, on November 1, 1905, indorsed both checks, and deposited them with said bank on special account, with the understanding that they were to be used by him and the bank in closing said land transaction. That Moore, who was a depositor and customer of the bank, distinctly stated to it at the time said deposit was made that it was on special account, telling its cashier, Rosenfield, as well as its assistant cashier, Wheeler, at the time that he did not wish said $2,000 intermingled with his general current account. That for some reason unknown to plaintiff the land transaction between Moore and Ellis was delayed many months. That in December, 1905, prior to the time the land transaction should have been closed, said bank, without Moore's consent or knowledge of plaintiff, charged said special account of $2,000 off the special account, and placed the same to the credit of Moore's general account, who at the time was indebted to said bank on his general current account. That Moore protested against said act of the bank at the time without avail. That Moore and the bank failed to inform plaintiff of said act, and he never learned of the unlawful appropriation by the bank of the $2,000 until in March, 1908. That Moore during the years 1906 and 1907 at divers times during said years assured plaintiff that the land transaction between him and Ellis would be closed, and that the $2,000 which had been advanced by him had been paid to Ellis, and that the deed to the property was being held by the defendant bank until such time as Moore would pay the remaining $500, when it would be delivered to him and plaintiff get his lien as agreed. That about March 1, 1908, the plaintiff pressed Moore to close said transaction, whereupon Moore, for the first time, informed him that the $2,000 so deposited had been used by the bank to balance Moore's general account and converted to its own use and benefit, and that he (Moore) was unable to obtain said sum of money from the bank, and had given Ellis notes for the unpaid purchase money on said land, and that suit had been filed against him by Ellis to foreclose the lien on said property. That plaintiff had no reason to suspect Moore until the discovery in such manner from him of the misap-

plication of said sum of money, and that up to March, 1908, plaintiff labored under the belief that the facts represented to him by Moore were true. That Moore, so far as plaintiff's knowledge extended, stood well in the community in which he lived, had held various public offices of trust, and to all intents and purposes was thoroughly reliable and responsible.

The defendant Moore answered by a general denial. The other defendant pleaded a general denial and the two and four years statutes of limitation. The case was tried without a jury, and the court, upon hearing the evidence, rendered judgment in favor of plaintiff against the defendant Moore and against plaintiff in favor of defendant the First National Bank of Del Rio. From the judgment against him in favor of the bank, the plaintiff has appealed.

It may for reasons which naturally suggest themselves to the legal mind be doubted whether the appellant would be entitled to recover from the appellee had he proved all the allegations in his petition. But, as the latter's exceptions to the petitions were not presented to nor acted upon by the trial court, we will assume for the purpose of deciding the questions presented that the petition showed a good cause of action in favor of appellant against the appellee. There being nothing alleged that showed any contract or privity between the plaintiff and the bank, it must appear that the latter was guilty of some negligence, fraud, or deceit towards the former regarding the deposit of the $2,000 made by Moore with the bank. This deposit was not, when made, the plaintiff's money, but was Moore's, loaned to him by the plaintiff for a specific purpose with the express understanding between them that it should be used by the borrower for that purpose. If in any case it can be held that a bank as a depository is charged with the duty to a third party of seeing that its depositors draw, use, and appropriate their money deposited with it for and to the purpose for which they acquired it, certainly such duty cannot be held to arise unless it be shown that the bank knew the facts in relation to the deposit which impose upon it such a duty. We do not mean to intimate that even in such a case any such duty devolves upon a bank, but simply put it as the most favorable position plaintiff can occupy in the case under consideration. The evidence in this case fails to show that the appellant or any of its officers knew anything, either when the money was deposited or when any of it was checked out by Moore or at the time it was placed to his general account, about the agreement or understanding between plaintiff and Moore in regard to the purpose and use for which the $2,000 was loaned by the former to the latter. Nor do we think that the fact that the deposit by Moore was made on special account placed the bank upon inquiry as to what the special account was, so as to charge it with notice of the agreement between plaintiff and Moore in regard to the purpose and use for which the money was intended by the parties. The deposit being made on an account styled "Henry I. Moore, Special," conferred no notice of the purpose and use to which the money was to be applied.

In a recent case, where money was deposited in a bank to the credit of "Ray Miller, Agent," the Supreme Court said: "It is beyond question that a bank receiving a deposit, made as this one was, became bound, and therefore entitled to treat the depositor as the owner of the fund, and to honor and pay his checks properly drawn, without concerning itself with any question as to the ultimate ownership or as to the application made or to be made of the money drawn out." Silsbee State Bank v. French Market Grocery Co. (Sup.) 132 S. W. 465. This, it seems to us, is in point, and decisive of the question under consideration; for if a deposit in a bank to "Ray Miller, Agent," bound and entitled the bank to treat the depositor as its owner, we can perceive no reason why a deposit to the credit of "Henry I. Moore, Special," should not be regarded in the same manner.

But, apart from the matter just considered, we think it sufficiently appears from the evidence that plaintiff's action, if any he had, is barred by the two-year statute of limitation. As before observed, this suit was filed August 4, 1908. The undisputed evidence shows that plaintiff delivered the two checks to Moore on October 16, 1905, one drawn in his favor on the Del Rio National Bank, the other in his favor on the Lockwood National Bank of San Antonio, each for $1,000; that on November 1, 1905, Moore indorsed both and delivered them to the appellee, and he was given credit on appellee's books for the total amount in an account styled "Henry I. Moore, Special"; that Moore began checking against this special account immediately, and on December 26, 1905, had $1,516.25 left to his credit on such account; that on this date such balance in Moore's favor was, with his consent, transferred to his general account; that at the time his general account with the bank was overdrawn to the amount of $1,191.08; that after the transfer was made he continued to draw on his general account, and by January 5, 1906, had overdrawn to the extent of $152.42, after having been credited on his general account with said sum of $1,516.56 transferred from said special account; that plaintiff let Moore have the money for the purpose of paying it on the purchase price of a house and lot in Del Rio purchased by the latter from Ellis on Moore's promise that he would have the property conveyed to his wife, and that plaintiff should be secured by a first lien thereon; that Ellis conveyed the property to Moore, instead of to his wife, and that plaintiff knew, either at the time he advanc-

ed the money or shortly afterwards, that Moore had obtained possession of the property; that plaintiff knew the checks were cashed, one on November 1, 1905, and the other on the next day; that he knew that Moore had not conveyed the property to his wife, nor given him an express lien thereon to secure him in the payment of the money. This he must have known or was charged with knowledge of it, for he testified that he inquired of Moore frequently about the matter, and that Moore always put him off with some excuse. Yet there is no evidence tending to show that he ever took any steps to protect himself or that he ever inquired at appellee's bank, where Moore had told him the papers were, about the matter, though he frequently was in the city of Del Rio. If there were any proof tending to show a fraudulent conversion of the money by the bank, which there is not, plaintiff could have by the exercise of reasonable diligence ascertained the fact within six months after he let Moore have the money. The evidence in the record is insufficient to show any fraudulent concealment by the appellee as to what was done with the money. It is the law in this state that neither fraud alone nor ignorance of its existence will prevent the statute of limitation from running. The ignorance which effects such a result must be attended with such concealment of the fraud as will prevent its discovery by the exercise of reasonable diligence. Calhoun v. Burton, 64 Tex. 516; Stanford v. Finks, 45 Tex. Civ. App. 30, 99 S. W. 452; Dunn v. Taylor, 42 Tex. Civ. App. 241, 94 S. W. 348, and authorities cited.

There is no error in the judgment, and it is affirmed.