CENTRAL BANK & TRUST CO. v. FORD.

(Court of Civil Appeals of Texas. El Paso. Oct. 31, 1912. Rehearing Denied Jan. 15, 1913.)

1. EVIDENCE (§ 432*)—WRITTEN INSTRUMENTS—PAROL EVIDENCE—CONSIDERATION.

Evidence of an understanding that a note would not be enforced, or create a liability, was admissible to show that a contract, evidenced by the note, was invalid for want of consideration.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1981–1989; Dec. Dig. § 432.*]

2. BILLS AND NOTES (§ 96*)—ACCOMMODATION PAPER—CONSIDERATION.

Accommodation paper must always be supported by a consideration, but the accommoda-

tion party is bound by the beneficial consideration moving to the party accommodated, if no other passes.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 165; Dec. Dig. § 96.*]

3. BILLS AND NOTES (§ 49*)—ACCOMMODATION PAPER—PARTIES.

An accommodated party cannot sue or recover from an accommodation party.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 66; Dec. Dig. § 49.*]

4. BANKS AND BANKING (§ 116*)—OFFICERS—NOTICE TO PRESIDENT—AGENCY.

Where the president of a bank receives paper under an agreement that it will not be collected, it cannot be said that he was not acting for the bank, and that notice to him of such an agreement was not notice to the bank, simply because he was personally the one at interest in having the bills receivable of the bank to properly balance the books.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 282–287; Dec. Dig. § 116.*]

5. BILLS AND NOTES (§ 113*)—COLLATERAL AGREEMENT—ESTOPPEL.

Where one gave a note without consideration to a bank, with an understanding that it was not to be collected and was to be canceled at maturity, and it was renewed several times as though to cover interest, no element of estoppel in favor of the bank exists in an action on the note after maturity.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 223; Dec. Dig. § 113.*]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by the Central Bank & Trust Company against T. C. Ford. Judgment for plaintiff for a part only of several notes, and it appeals. Affirmed.

C. R. Wharton and T. H. Botts, both of Houston, for appellant. Ford & Beaty, of Jasper, and R. E. Crawford, of Houston, for appellee.

HIGGINS, J. The Central Bank & Trust Company of Houston, a banking corporation, brought suit against the appellee, Ford, upon four promissory notes and for foreclosure of a deed of trust upon lots 8 and 9 in block 6 in the city of Houston, executed for the purpose of securing the said notes and any other indebtedness owing by the said Ford to the bank. One of the notes sued upon was in the sum of $4,800, dated December 12, 1909; one for $250, dated December 21, 1909; one for $300, dated January 8, 1910; and the other for $450, dated January 18, 1910. Upon trial before the court without a jury, judgment was rendered in favor of the bank for the amount of the three smaller notes, and in favor of the defendant on the $4,800 note, and denying foreclosure of the deed of trust.

Findings of fact and conclusions of law were filed by the trial court, as follows:

"Findings of Fact.

"First. Recovery is sought by the plaintiff herein, the Central Bank & Trust Company, against the defendant, T. C. Ford, on four promissory notes executed by defendant to plaintiff, as follows: One note for $4,800, dated December 15, 1909, due April 15, 1910; note for $250, dated December 21, 1909, due April 15, 1910; note for $300, dated January 8, 1910, due April 8, 1910; note for $450, dated January 18, 1910, due April 18, 1910—all of said notes being secured by a certain deed of trust dated January 19, 1910, executed by defendant to F. E. Pye, Trustee, for the use and benefit of the Central Bank & Trust Company, and conveying therein lots 8 and 9 in block 6 of subdivision of 10-acre lot 19 in the Holman survey in the city of Houston, Tex., said deed of trust reciting the above-described promissory notes executed by defendant, and containing the usual stipulations in default of payment of said notes, same being filed for record January 20, 1910, and recorded February 11, 1910, in volume 87, pp. 117, 118, of the mortgage records of Harris county, Tex. As these notes represent different transactions and arise upon a different state of facts, I shall first consider the findings with reference to the note for $4,800 upon which recovery was denied plaintiff herein.

"Second. I find from the evidence, with respect thereto, that some time in the early part of 1909, probably about the 1st day of February, the cashier of plaintiff's bank, Mr. Sayre, in trying to balance the bills receivable of said bank, discovered that they were short about $3,700 (there being no evidence as to when or how such shortage occurred), and, upon his calling the attention of Mr. Pye thereto (Pye being at that time and during all the times hereinafter mentioned president of said bank), he was advised by Pye that he would procure a note to be placed temporarily among the bills receivable of said bank until said matter could be looked into and arranged with the prior cashier thereof.

"I find that about this time Pye requested of the defendant, Ford, who had been doing considerable business with the bank and who was a personal friend of his, to execute a note for $3,500 to said bank; he (Pye) assuring defendant that he wanted to place same in the bank temporarily, and that when it became due the bank would cancel and return the note to him.

"I find that no money or other thing of value whatsoever passed between said parties, and that said note was purely an accommodation note given with the understanding between the defendant and the officers of said bank, including the president, cashier, and assistant cashier, that same was purely accommodation paper and would not be regarded by the bank as an obligation of the defendant; Pye, at the time, agreeing with defendant to give him some written evidence in the shape of a letter to this effect.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

"I further find that this note- was not presented to the defendant, nor was any demand made on him by the bank for payment thereof at its maturity; that same was not carried on the books of the bank in any form, as an asset thereof, until some time in the fall of 1909, 'probably about the 1st of November, when Sayre was succeeded as cashier of said bank by August De Zavala.

"I further find that, shortly after he .became cashier, De Zavala made repeated demands upon defendant to settle this note and other indebtedness then due by Ford to the bank, and that at said time De Zavala believed said note to be genuine and had no notice to the contrary until some time in November, 1909, when, in response to the notices sent by him as cashier, the defendant called at the bank and explained to him that the note was not his obligation, and that the several items referred to as accrued or past-due interest and added thereto were improper charges.

"I find that the defendant was then referred by De Zavala to Pye for an adjustment of these matters, and after a consultation between Pye and De Zavala the latter was requested by Pye to prepare a new note which would cover the note of $3,500 above referred to and other items of indebtedness claimed by De Zavala to be due the bank by Ford; Pye advising him that he would have Ford execute the new note and give some security therefor. At a conference between Pye and Ford, the latter insisted that he did not owe said amount, which statements were acquiesced in, and agreed to, by Pye, and, when reminded of his promise to give some written evidence of the fact that this note was not Ford's obligation, Pye again assured Ford that he would attend to same; and with this understanding upon the part of both Pye and Ford, that same was not, and would not, become an obligation or indebtedness of Ford's to the bank, but that same would be canceled by the bank when due and returned to him, Ford executed the $4,800 note herein sued on. At that time Ford did not know, nor did he make any inquiry, as to what items of indebtedness were comprised in said $4,800 note, but he relied upon Pye's renewed promise and assurance that same was purely an accommodation note, and that it would not be used by the bank, but would be canceled and returned to him when due. Shortly thereafter Ford, not having received the written acknowledgment referred to above, prepared and sent to Pye for his written signature the following instrument of writing, which was signed by Pye as president of said bank, and delivered to Ford as per his former agreement; same being as follows: 'Houston, Texas, December, 1909. Mr. T. C. Ford, City—Dear Sir: This is to acknowledge and certify that the note executed by you, dated the —— day of —— 1909, and due April 15, 1910, in favor of the Central Bank & Trust Company in the sum of $4,800.00 is not your note, and this bank will not enforce collection of same against you, and when the same is due it will be canceled and delivered over to you. [Signed]  Central Bank & Trust Company, by F. E. Pye, President.'

"While there is some divergence in the. testimony with reference to a portion of the indebtedness comprising the $4,800 note, yet the above is a fair deduction from the evidence and circumstances attendant and surrounding the execution of same.

"With reference to the three notes herein sued on, and aggregating $1,000, upon which there was judgment rendered for the plaintiff, I find the following facts pertaining thereto:

"First. That the defendant, Ford, obtained the amounts represented by said notes in cash from the Central Bank & Trust Com-. pany at different times as represented by the dates of said notes, and that said notes were at all times treated by the officers of said bank as his valid obligation and as an asset of said bank.

"I find that there was no 'failure of consideration' as claimed, either in whole or in part, as to these three notes, and that said transactions were correctly reflected by the books of the bank which were introduced in evidence and showed that the defendant, Ford, obtained the money from the bank at the times and in the amounts evidenced by said. notes, and that same were, and are, valid obligations upon the part of said Ford.

"Now with reference to the deed of trust referred to: I find that at the time of the negotiations between Pye, De Zavala, and Ford looking to the execution by Ford of the $4,800 note and of the three smaller notes, or shortly thereafter, the bank examiner had called for some security for this indebtedness, and, Ford's attention being directed thereto, he agreed with Pye, as president, that if the bank would let him have an additional sum of $1,500 he would execute a deed of trust covering the $4,800 note, the smaller three notes aggregating $1,000, and also to cover the loan of $1,500 to be made.

"I find from all the testimony in this case that the deed of trust was executed with the express understanding and agreement between said Pye and Ford that Ford was to obtain the additional $1,500, but that Ford did not obtain any part thereof, and hence there was a total failure of consideration as to the execution of said deed of trust. This view is further emphasized by the fact that subsequently, to wit, on the 14th day of April, 1910, and again on the 16th day of April, 1910, Pye, as trustee in said deed of trust, released the lien retained on said lots to Ford, reciting payment of said indebtedness, but that as a matter of fact said releases were made because of the failure of Pye and said bank to advance said $1,500 to

Ford as was agreed upon at the time of the execution of the deed of trust.

"I further find with reference to said lots: That lot No. 8 therein described was at that time, and for a long time prior thereto, the homestead of said Ford and his wife, and was so known to be by all the parties to this transaction, and that as to lot No. 9 there has been failure of consideration for the execution of said deed of trust.

"I find that F. E. Pye, as president of the Central Bank & Trust Company, made most of the loans and transacted practically all the business for and on behalf of said bank, and that his authority to so act in the premises was acquiesced in and ratified by the board of directors and those in authority in said bank.

"From the foregoing findings of fact I conclude as a matter of law:

"First. That the $4,800 note herein sued on was purely an accommodation note given to said bank for the purpose of assisting them temporarily, and that no real consideration having passed, and the president of said bank at the time of the execution of said note and prior thereto having an agreement with the defendant that same was not an obligation of his and would be canceled by the bank and returned to him when due, and said bank being bound by the acts and declarations of its president, Pye (he acting with the knowledge and consent of some of the officers), that there has been a total failure of consideration as to said note, and that plaintiff is not entitled to recover thereon.

"Second. I conclude, as a matter of law, that the three notes herein sued on, aggregating $1,000, together with the interest and attorney's fees as therein specified, being a valid obligation of the defendant, Ford, that the plaintiff should recover of and against him the amount of said notes together with interest and attorney's fees as therein specified.

"Third. I conclude, as a matter of law, that the consideration for the execution of the deed of trust having wholly failed, same became and is wholly inoperative, and was not, and is not, sufficient in law to create a lien upon the property therein described, and that same should be canceled and for naught held."

We find that the court's conclusions of fact are abundantly supported by the testimony, and here adopt the same, with such additional conclusions of fact as may be stated in this opinion.

The first assignment submitted as a proposition is not considered, because it is not a proposition within itself so as to authorize its submission as such.

[1] Under the second assignment it is contended the court erred in admitting the testimony of defendant, Ford, and of F. E. Pye, president of the plaintiff bank, to the effect that there was an understanding between Pye and Ford that Ford was to assume no liability to the bank on the $4,800 note sued upon and the other notes executed prior thereto, of which the $4,800 note was a renewal; that the other officers of the bank knew under what circumstances the note was executed and of Pye's agreement in his capacity as president of the plaintiff bank with defendant, Ford, to that effect, as evidenced by the letter dated December, 1909, quoted in full in the trial court's conclusions of fact. In support of this assignment it is contended that such testimony was inadmissible because the note sued upon evidences the contract between the parties, and parol evidence of a contemporaneous agreement varying or destroying the contract is inadmissible; and, further, that the testimony was inadmissible because it was not within the lawful powers of the president, cashier, or other officer of a bank to accept paper payable to the bank for which the bank gave either directly or indirectly a consideration, and to agree collaterally with the maker of the paper that it need not be paid or will not be collected.

As to the first proposition presented, it is, of course, well settled that a valid contract in writing cannot be varied or contradicted in its terms by parol evidence of a contemporaneous agreement at variance with the terms of the written contract. No contract, however, is valid unless supported by a consideration, and in the case at bar the trial court found, and this court finds, that the contract evidenced by the note for $4,800 was invalid for want of consideration, and the testimony referred to was properly admissible to show the want of consideration. The testimony did not vary or alter the contract evidenced by the note, but in effect was to show that there was no contract which could be enforced as valid.

As to the second proposition, it is founded upon the premise that the contract was supported by a consideration, and being founded upon a false premise, it is unnecessary to further consider the same. As an abstract question of law, the proposition is probably well taken, but is not applicable here.

[2, 3] It is further urged that, while there was no consideration for the execution of the $4,800 note, yet the court found it was an accommodation note, and, as no consideration is required as the basis of an accommodation note, judgment should have been rendered thereon; that accommodation paper implies the maker has lent his name and credit for the benefit of another, and it is no defense that no real consideration passed to the accommodation maker. This, however, is not the law. Accommodation paper is always supported by a consideration. If no other consideration passes, the beneficial consideration moving to the party accommodated from the payee or holder is sufficient

to bind the accommodation party. This proposition loses sight of the further well-settled rule of commercial paper that the accommodated party cannot sue and recover from the accommodation party. See numerous cases cited in note 7 Cyc. 726.

[4] Appellant also contends it was no defense to the note sued on that Pye, as president of the bank, made the collateral agreement with Ford above referred to, as notice to Pye of these things was not notice to the bank, nor was Pye an agent of the bank in this transaction, but, on the contrary, was acting for himself. To this it is sufficient to say that, if Pye was not acting in behalf of the bank, there is nothing in this record to so indicate; upon the contrary, as reflected by the record, there is no question but what Pye acted as a representative of the bank and was vested with full power and authority to represent the bank in all matters pertaining to its business. It may be that he personally was the one at interest in having the bills receivable of the bank to properly balance, but this does not alter the fact that he acted as the representative of the bank in his negotiations with Ford; not only this, but Sayre, the cashier of the bank at the time of the acceptance of the original note, had full knowledge of all these facts, and when De Zavala, the cashier at the time the $4,800 note was accepted, took the matter up with Mr. Ford, he was advised by Mr. Ford that he was not liable on the note, and he referred Ford to Pye for an adjustment and settlement of the matter.

[5] There is no merit whatever in the contention that Ford is estopped to deny the validity of the note sued upon. No element of estoppel in favor of the bank could possibly exist under the circumstances disclosed by the evidence in this case and as reflected by the court's conclusions of fact.

The fourth and fifth assignments, complaining of the court's finding that the $4,800 note and the deed of trust were executed without any consideration, are overruled. The testimony abundantly supports these conclusions.

We also overrule appellee's cross-assignment, which complains of the action of the trial court in rendering judgment against him upon the three smaller notes. We think the trial court was warranted in holding that these notes were upon a valid consideration.

The judgment is in all respects affirmed.