**J. C. ALVIS et ux., Appellants,**

v.

**T. B. McDONALD et al., Appellees.**

**No. 6791.**

Court of Civil Appeals of Texas.

Texarkana.

Sept. 8, 1955.

Rehearing Denied Oct. 13, 1955.

R. T. Wilkinson, Leonard Passmore, Mt. Vernon, for appellant.

Carney & Mays, Abe M. Mays, Jr., Atlanta, Woodrow H. Edwards, Mt. Vernon, for appellees.

DAVIS, Justice.

This is a suit by J. C. Alvis and wife, Effie Alvis, plaintiffs below, against T. B. McDonald, Claude McDonald, E. J. Moran, L. A. Grelling, and the unknown heirs of G. O. Kelley, deceased, defendants below, to cancel a certain mineral deed executed by plaintiffs to G. O. Kelley on May 14, 1937, covering a 25-acre undivided interest out of a 100-acre tract of land situated in Franklin County. Fraud was alleged as the basis of cancellation, plaintiffs alleging that one Dove McDonald approached J. C. Alvis to buy an undivided ¼ non-participating royalty interest for a term of 15 years in and to said 100-acre tract of land.

Plaintiffs alleged and the evidence shows that Dove McDonald made the deal and prepared or had the deed prepared under his direction which is sought to be cancelled and which deed is a perpetual mineral deed.

We reversed and remanded this cause for lack of necessary parties on original submission, Alvis v. McDonald, Tex.Civ.App., 276 S.W.2d 957, but the Supreme Court reversed our opinion, McDonald v. Alvis, 281 S.W.2d 330, holding that beneficiaries under an unlimited trust were not necessary parties in a suit for cancellation, and in effect holding that letters written to the attorneys for appellants and appellees constituted disclaimers, not filed in the trial court but originally filed in this court, should have been considered by us in disposing of this case.

On a further examination of the statement of facts in the case, we find that the evidence shows that plaintiffs had executed other oil and gas leases immediately before the trial of the case covering all the minerals in the entire 100-acre tract of land, but does not reveal the names of the lessees. It is possible that these lessees may be necessary parties to this suit.

The evidence is uncontradicted that Dove McDonald, who was acting either for himself or as the agent of G. O. Kelley, either prepared or had the deed prepared that is sought to be cancelled.

The testimony of Mr. Alvis shows that McDonald came to the field where Alvis was working and they entered into an agreement that Alvis and wife would sell and McDonald would buy a ¼ undivided non-participating royalty interest in and to the said 100 acres of land. McDonald went immediately to Winnsboro, and either prepared or had prepared a perpetual mineral deed covering ¼ of all minerals, and returned for their signatures and brought with him a Notary Public to take their acknowledgments. Mr. Alvis further testified that when McDonald returned with the deed and the Notary that McDonald told him that the deed was a ¼ non-participating royalty deed for 15 years and that he signed it without reading it,

believing and relying on what McDonald told him. They then carried the deed into the house for Mrs. Alvis to sign, and her testimony is that she told them she would not sign for more than 10 years and she was told by McDonald that it was such 10-year royalty deed. A son of appellants testified that he was in an adjoining room, the door was open, and he heard the conversation between his mother and McDonald and that McDonald assured her that it was a 10- or 15-year royalty deed. Both Mrs. Alvis and her son testified that the Notary did not explain the deed to her and that she signed it without reading it or having it read to her. Mrs. Alvis testified that she signed the deed believing and relying upon the representations of McDonald. The testimony is uncontradicted that the deed was signed by Mr. and Mrs. Alvis without their reading it or having it read to them.

McDonald testified that he left a copy of the deed with the Notary for Mr. and Mrs. Alvis, but did not explain why he left it with the Notary instead of giving it to them. Neither did McDonald give any good reason why he had Kelley made the grantee instead of himself, and yet he paid his money for it. And Dove McDonald testified that he bought the same mineral interest from Kelley on June 15, 1940, that he paid Kelley his money for it at the same price he paid Mr. and Mrs. Alvis, and had the deed put in the names of two of his brothers as trustees, but gave no good reason for that.

The property involved constituted the homestead of the plaintiffs at the time of the execution of the mineral deed sought to be cancelled and at the time of the filing of this suit.

Mr. Alvis testified that the agreement between McDonald and himself was for a 15-year term non-participating royalty. Mrs. Alvis testified that she agreed to sign the instrument only in the event it was for a 10-year term non-participating royalty. Dove McDonald testified that there was not anything said about non-participating royalty or a term of years being placed upon the deed.

According to the testimony of Mr. and Mrs. Alvis, Kelley did not appear on the scene nor was his name as much as mentioned during the negotiations or at the time the deed sought to be cancelled was executed, nor did they know Kelley was made the grantee in the deed. Dove McDonald paid for the minerals by his personal check. The mineral deed was filed for record on May 20, 1937, in the deed records of Franklin County. On July 20, 1940, Kelley conveyed the ¼ mineral interest to T. B. McDonald and Claude McDonald, Trustees, and this instrument was filed for record in Franklin County on June 18, 1942. On June 15, 1942, plaintiffs executed an oil and gas lease to E. J. Moran in which the phrase "our ¾ interest in and to" is used with reference to the 100-acre tract. This lease was offered by appellees for the purpose of showing notice to appellants of the existence of the mineral deed. Mr. Alvis explained that by testifying that Moran came to his home and wanted to buy a lease on 75 acres of his land and that Moran prepared the lease and he and his wife signed it.

Mr. Alvis and his brother-in-law testified that in the fall of 1951, about the time Alvis thought the royalty deed was supposed to run out, they went to the deed records in Franklin County to check on it, and then was when Alvis learned for the first time that the deed he and his wife signed was a perpetual mineral deed to an undivided ¼ mineral interest in and to his tract of land. He promptly sought the services of an attorney, and on October 15, 1951, suit was filed to cancel the deed.

Mr. and Mrs. Alvis testified positively that the deed they signed was to be for a ¼ non-participating royalty for a limited term of years.

Trial of the case was to a jury and at the conclusion of all the evidence defendants T. B. and Claude McDonald filed a motion for instructed verdict and the court withdrew the case from the jury and ren-

dered judgment that plaintiffs take nothing and quieted title to said ¼ mineral interest in T. B. and Claude McDonald, without reference to the other defendants to the suit or the beneficiaries under the trust.

By point 1 appellants complain of the action of the trial court in taking the case from the jury and rendering judgment for the defendants and holding that appellants had notice of the fraud alleged in their petition as a matter of law more than four years prior to the filing of their suit, and that their claim was barred, and no fact issue was raised by the evidence to be decided by the jury. In passing upon all issues raised we have to view all material evidence offered by the adverse party as true. 41–B Tex.Jur. 208, Sec. 180 and authorities cited; 41–B Tex.Jur. 219, Sec. 188 and authorities cited; 41–B Tex.Jur. 422, Sec. 189 and authorities cited; Brumit v. Cokins, Tex.Civ.App., 281 S.W.2d 154.

From the record and the briefs it is apparent that the trial judge did hold as a matter of law that appellants were charged with notice of the contents of the instrument which they signed as well as charged with the notice of its having been filed for record, and no fact issue was raised by the pleadings and evidence. Appellees take the position that appellants are charged with notice of the contents of the instrument as a matter of law and rely upon the following authorities: Sherman v. Sipper, 137, Tex. 85, 152 S.W.2d 319, 137 A.L.R. 263; Hudson v. Wheeler, 34 Tex. 356; Barclay v. Falvey, Tex.Civ.App., 100 S.W.2d 791; Prosser v. First National Bank, Tex.Civ.App., 134 S.W. 781; Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 133 S.W.2d 767; Kahanek v. Kahanek, Tex. Civ.App., 192 S.W.2d 174.

If the evidence had shown that appellants as grantors had prepared or caused the instrument they signed to be prepared under their instructions, the position of the trial court and of the appellees would be correct, but there is a well-recognized exception to that rule wherein the deed or instrument sought to be cancelled was pre-pared by the grantee or under his instructions. As pointed out by Chief Justice Hall in the case of Hutchins v. Birdsong, Tex.Civ.App., 258 S.W.2d 218, 221, w/r, n. r. e., where the deed was prepared by the grantee or under his instructions, the grantor is not charged with notice of any fraudulent insertion or omission until such time as conditions arise to put grantor on notice of such fraud, and the mere signing and filing of the instrument of more than 12 years prior to the filing of suit for cancellation is not sufficient to charge one with notice of the contents of the instrument as a matter of law. In speaking of the exception we quote:

"The burden of appellants' contention is that, under the facts in this case, appellee, grantor in the deed from him and Amos Ward to Belitsky, is charged, as a matter of law, with knowledge of the contents of the deed. They cite the cases of Kennedy v. Brown, Tex.Civ.App., 113 S.W.2d 1018 (writ dismissed) and Kahanek v. Kahanek, Tex.Civ.App., 192 S.W.2d 174.

"We have been requested by the appellants to discuss those two cases in relation to the facts of this case. Those cases hold that as a general rule a grantor is charged with knowledge of the provisions in his deed; and that limitation begins to run against any action by him to correct a mistake in his deed from the date of the execution and delivery of the instrument. We recognize that as being a general rule, but both of these cases cited above reveal that they each recognize an exception to that rule. This exception is clearly set out in the Kennedy case (113 S.W.2d 1020), as follows: 'It is equally well established by the authorities that in such cases limitation does not begin to run until the mistake is discovered or should have been discovered by the exercise of such diligence as would be exercised by a person of ordinary care and prudence.' Citing cases. Great stress in those cases is laid upon the fact that

the grantor in each case had the deed prepared and delivered to the grantee. And in the Kennedy case it is stated further: 'It is neither alleged nor shown by the evidence that appellants did any act or thing which could be construed as an assurance to appellee (grantor) that the deed was written as contemplated by the contract (reserving the mineral interest) or that could have had the effect of *lulling appellee into a sense of security in reference to the matter.*' (Italics ours.) We think that the above holding is also the holding of the court in the Kahanek case, which cites the Kennedy case as a basis for its holding. Thus it is clear that in the above cases had the facts shown that the grantees in the deeds involved in those cases had done any act or made statements which would have been sufficient to lull the grantor to sleep, then it seems to us that limitation under the exception set out above would not have begun to run against the grantor until they had discovered the mistake."

It is also a settled rule of law that a suit to cancel an instrument based upon fraud is a personal action and limitation does not begin to run until the fraud is discovered. Deaton v. Rush, Tex.Com.App., 113 Tex. 176, 252 S.W. 1025; Mason v. University of the South, Tex.Civ.App., 212 S.W.2d 854, w/r, n. r. e.; Luginbyhl v. Thompson, Tex.Civ.App., 11 S.W.2d 380, w/d. There are two excellent articles on the questions involved here in Baylor Law Review, citing numerous authorities. One by Billy Joe Sanders in Vol. 4, page 955; and one by Joe Coleman in Vol. 7, page 241. As pointed out in these articles, a suit for cancellation or reformation for fraud or mutual mistake is a personal action and may be commenced within the period of limitation prescribed by law after the fraud or mistake is discovered. This is a personal action and not one to recover the mineral interest.

We have concluded that there is sufficient evidence to raise the issue of fraud in this case as well as an issue of fact on notice and that appellants were entitled to have a jury finding thereon. Point 1 is sustained.

By points 2 and 3 appellants complain of the error of the trial court in rendering judgment for appellees because the property involved was the homestead of appellants and that limitation did not run against Mrs. Alvis because of her coverture of marriage, and holding as a matter of law that the testimony was sufficient to show the defendants to be bona fide purchasers. The authorities cited on the first point dispose of the issues raised here.

The judgment of the trial court is reversed and the cause is remanded.

FANNING, J., did not participate in this case.