W. A. PHILLIPS et ux., Appellants,

v.

C. B. WOODARD et ux., Appellees.

No. 6969.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 26, 1957.

Rehearing Denied Oct. 31, 1957.

Wm. Emerson Stone, Jr., Stone & Stone, Jacksonville, for appellants.

Collins, Garrison, Renfrow & Zeleskey, James R. Cornelius, Jr., Lufkin, for appellees.

DAVIS, Justice.

In order to get a true picture of this lawsuit, it will be necessary to give a lengthy and detailed outline.

On November 2, 1949, Glenn E. McClung and Jack A. McClung entered into the following agreement with Wallace A. Phillips:

(Defendants' Ex. 7)

"Jacksonville, Texas
November 2, 1949

"This memo of agreement-made and entered into this second day of November, 1949 by and between Glenn *A.* McClung and Jack A. McClung of the first part and Wallace A. Phillips of the second part, witness*ed.*

"Paragraph 1. Party of the second part for and in consideration of $1.00 and other good and valuable considerations agrees to lend and place at the disposal of the parties of the first part $6,000.—with Mr. C. D. Acker of the Texas State Bank of this city as escrow agent, subject to withdrawal by said parties of the first part for drilling operations in Ouachita County, Arkansas.

"Paragraph 2. Parties of the first part hereby agree to deliver to party of the second part:

"(1) Their promissory note in the sum of $6,000.00 bearing interest at the rate of 6% from maturity until paid, payable in installments as follows: $500.00 on or before December 4, 1949, $1000.00 on or before January 4, 1950, $1000.00 on or before February 4, 1950, $1000.00 on or before March 4, 1950, $1000.00 on or before April 4, 1950, $1000.00 on or before May 4, 1950, and $500.00 on or before June 4, 1950;

"(2) Their one certain chatt*le* mortgage to secure the payment on said note on all the equipment, supplies, tools and assets of every nature on the McClung Electrical School, Palestine, Texas;

"(3) A second lien deed of trust on the following described real property situated in Anderson County, Texas, to wit: Lots 11 and 12, Block 1 of the S. A. Overbaugh survey, the same being in building and physical premises of said McClung Electrical School;

"(4) A contract for the assignment of a 1/32 of 7/8 overriding interest and to certain oil and gas leases on land situated in Ouachita County, Arkansas.

"Paragraph 3. Both parties agree that such information herein contained or which might be developed from this association shall be held in the strictest confidence.

"/s/ Glenn E. McClung
"/s/ Jack A. McClung
"/s/ Wallace A. Phillips."

On November 7, 1949, Glenn E. McClung and Jack A. McClung, in keeping with the above agreement, executed and delivered the following contract to Wallace A. Phillips:

(Defendants' Ex. 6)

"The State of Texas
County of Cherokee

"Whereas, on the 4th day of Nov., 1949, J. M. Passwaters, Trustee, has, for a valuable consideration, entered into a certain contract with *Glen* E. McClung and Jack A. McClung and others for the formal assignment of certain oil and gas leases on the following described land situated in Ouachita County, Arkansas, to-wit: Being the East Half of Southeast Quarter, Section 14, Township 15 South, Range 19 West; and the said *Glen* E. McClung and Jack A. McClung are presently negotiating and have negotiated for the lease on an adjoining 80 acres of land; both of which lots, parcels or tracts of land are subject to, and as a condition precedent to the assignment of said leases in said contract with said Trustee, the drilling and developing of such lands for oil and gas purposes;

"And Whereas, such leasehold interests will not vest in the said *Glen* E. McClung and Jack A. McClung until they have fully performed such conditions precedent; and Wallace A. Phillips, being fully advised of such facts and conditions, is desirious of purchasing a part interest in and to such leasehold interests;

"Now, therefore, we, *Glen* E. McClung and Jack A. McClung, of Cherokee County, Texas, in consideration of $1.00 and other good and valuable consideration, the receipt of which is hereby acknowledged, have contracted and do hereby contract to sell, transfer and assign unto the said Wallace A. Phillips, his heirs and assigns an undivided ⅟₃₂nd over-rideing royalty interest in and to such leasehold interest on the above described premises—it is intended to cover by this contract, both tracts, the one specifically described and the one referred to, which adjoins

the tract described,—such assignment to be made, executed and delivered unto the said Wallace A. Phillips immediately upon receipt of the performance under the above referred to contract between the said McClungs and the said Passwaters, Trustee.

"Glenn E. McClung
"Jack A. McClung

"(Acknowledgment omitted)."

In the early part of December, 1949, Clyde Woodard, being one and the same as "C. E. Woodard," being desirous of purchasing some interest or holding in oil and gas properties, approached his brothers-in-law, Glenn E. and Jack McClung, who informed him that he might be able to purchase the contract on the minerals held by Phillips on the Arkansas property. Woodard approached Phillips for the purpose of buying the contract and a price was discussed. Woodard then made a private investigation as to the production and appraisal of the value of the property, returned to Phillips on December 23, 1949, and closed a trade with him. At the time the trade was closed, Woodard paid to Phillips $5,000 in cash and executed his promissory note payable to Phillips in the sum of $2,200 (the total price to be paid by Woodard to Phillips for Phillips' contract on the minerals being $7,200). At the time the cash was paid and the note executed by Woodard to Phillips, Phillips contends that he executed and delivered to Woodard the following instrument:

(Defendants' Ex. 2)

"December 23, 1949.

"Mr. Glenn E. McClung
"Jacksonville, Texas.
"Mr. Jack A. McClung
"Jacksonville, Texas
"Mr. Clyde Woodard
"Elkhart, Texas

"Gentlemen:

"On November 2, 1949, an agreement was drawn between Glenn E.

McClung, Jack A. McClung, and Wallace A. Phillips, whereby in consideration of certain favors done by Wallace A. Phillips, Glenn E. McClung and Jack A. McClung contracted to assign to Wallace A. Phillips a 1/32nd of 7/8th overriding interest in and to certain oil and gas leases on land situated in Ouachita County, Arkansas.

"I hereby am transferring this contract for assignment from Glenn E. McClung and Jack A. McClung to Clyde Woodard. Attached is letter dated November 2, 1949, in which the above is explained in detail. Paragraphs 2, parts 1, 2, 3, and 4, will remain as specified in the letter, but Part 5 covering the contract for assignment is to be transferred as stated above. Any documents which we might have will be transferred immediately to Mr. Woodard.

"This is authority for Glenn E. McClung and Jack A. McClung to make the above assignment to Mr. Clyde Woodard instead of to Wallace A. Phillips.

"WAP:JC          Wallace A. Phillips
"Julia E. Cook, Witness
"Sue Timble, Witness."

Phillips also contends that at the same time he delivered defendants' Exhibit 2 to Woodard, he also delivered to him defendants' Exhibits 6 and 7, and that on the back of defendants' Exhibit 6 he endorsed the following: "This contract is hereby assigned to Clyde Woodard." He then inserted the date, "December 13, 1949," and initialed the endorsement, "W.A.P." Woodard denies ever seeing either of the foregoing instruments until his deposition was taken after this suit was filed. Yet, on December 24, 1949, he borrowed $5,000 from Joe Bailey Parker, President of Elkhart State Bank, executed his note therefor, and in the lower left-hand corner of the note there is this notation: "Security—

1/32 of 7/8 int in 160 acres Royalty Ouachita County, Arkansas." All the above instruments hereinabove quoted showed up in possession of said banker when his deposition was taken after this suit was filed.

On June 23, 1950, Woodard renewed his $2,200 note to Phillips and added the earned interest to the principal, which made the principal of the renewal note amount to $2,266.

About the time the note was renewed, Woodard asked Phillips if he would give him a "deed" on the property in Arkansas, so he (Woodard) could get things straightened out. Phillips agreed to sign a deed if it would help Woodard and on August 15, 1950, Jack McClung presented to Phillips for the signature of Phillips and his wife the following instrument:

(Plaintiffs' Ex. 1)

"Whereas, Jack A. McClung and Glenn E. McClung of Jacksonville, Texas, are the owners of certain oil, gas and mining leases covering the Southeast Quarter (SE1/4) of Section 15, Wotnship 15 South, Range 19 West, Ouachita County, Arkansas, together with all leasehold rights of operating said lands for the production of oil and gas and the marketing of same, said leases being recorded in the office of the Recorder of said county; and,

"Whereas, W. A. Phillips is the owner of an undivided 1/32 of 7/8 overriding royalty interest in and to the oil, gas and other minerals in, on and under the lands covered by the above described leases;

"Now, Therefore, we, W. A. Phillips and Annie Laurie Phillips, his wife, for and in consideration of the sum of Five Dollars cash in hand paid by C. B. Woodard of Elkhart, Texas, receipt of which is hereby acknowledged, and other valuable considerations, do hereby grant, bargain, sell, transfer, assign and convey unto the

said C. B. Woodard, and unto his heirs and assigns, an undivided ½₂ of ⅞ of all of the oil, gas, casinghead gas or other minerals produced, saved and marketed from the above described lands covered by said oil and gas leases and the proceeds thereof, same to be delivered free of all cost in the tanks or pipe lines to which the well or wells upon said leasehold estate shall be connected to the credit of the said C. B. Woodard, his heirs and assigns, same to be free and clear of all costs and expense to the said C. B. Woodard, his heirs and assigns as an over-riding royalty, this assignment to be effective as of the date of first production of oil or gas from the above described lands. And for the same consideration the undersigned for themselves, their heirs and assigns, do hereby covenant with the said assignee, his heirs and assigns, that they are the lawful owners of said leasehold estate and the rights and interests thereunder, and that they have good right and authority to sell and convey the same, and that said rights and interest in property are free and clear of all liens and encumbrances and that they will forever warrant and defend the title to same against the claims of all persons whomsoever.

"And I, Annie Laurie Phillips, wife of the said W. A. Phillips, for the consideration aforesaid, do hereby join in this conveyance, and do hereby release and relinquish unto the Grantee herein all of my right of dower and homestead in and to the lease and rights hereinabove conveyed.

"Witness our Hands this 15th day of August, 1950.

"W. A. Phillips
"Annie Laurie Phillips.

"(Acknowledgments and certificate omitted)"

Note the absence in plaintiffs' Ex. 1 of the 80 "adjoining" acres included in de-fendants' Ex. 6. This absence is nowhere explained in this record.

On October 27, 1950, numerous plaintiffs filed suit against the McClungs, Woodard and other defendants seeking to foreclose numerous liens upon the entire leasehold estate held by the McLungs and those holding under them in Ouachita County, Arkansas. The liens were foreclosed and the property sold at a price insufficient to liquidate the liens.

On February 18, 1954, Woodard and wife filed suit against Phillips and wife in the District Court of Cherokee County upon the warranty contained in plaintiffs' Exhibit 1, and asked for judgment for the $5,000 and the cancellation of the note that Woodard executed to Phillips, and alleged that " * * * under the laws of the State of Arkansas, plaintiffs are entitled to recover of and from the defendants the purchase price paid to defendants for the mineral interests purported to have been conveyed and that under the laws of the State of Arkansas plaintiffs have been damaged in the sum of $5,000; that they are entitled to cancellation of the $2,000.00 purchase money note and for interest on said $5,000.00 from date of the deed of the purchase of the mineral interest described in this pleading." The laws of the State of Arkansas were not proved.

Phillips and wife answered by general denial, and specifically pleaded that the instrument of August 15, 1950, was without consideration, was executed as an accommodation at the request of Glenn E. and Jack A. McClung and as a matter of formality only. Defendant further pleaded that the execution of such instrument was secured by Woodard for the express purpose of making the claim he was then making by this suit for alleged breach of condition with the full knowledge that Woodard knew that Glenn E. and Jack A. McClung had theretofore been authorized to make such conveyance direct to Woodard.

Phillips also pleaded that the transaction of December 23, 1949, was a contract fully consummated on that date, that such contract of December 23, 1949, was without warranty, either express or implied, or any contention that Phillips was to subsequently execute any other instrument; and, the plaintiffs' cause of action, if any they had, was barred by the 4-year statutes of limitation, being Articles 5527, 5529, (5690, 3358 and 3207), Vernon's Ann.Civ. St. The answer was verified. Phillips also filed a cross-action on the $2,266.00 note.

Trial was to a jury and at the conclusion of the evidence in the case the court withdrew the case from the jury and rendered judgment for plaintiffs for the sum of $5,000, plus interest, and for cancellation of the note, holding that there was no issue of fact presented for the jury's decision. Defendants have appealed and brings forward four points of error.

By Point 1 appellants complain of the action of the trial court in sustaining appellees' special exceptions to appellants' allegations contained in paragraph V of their amended answer. The allegation reads as follows:

"V.

"Defendants would further show that the agreement between them and Plaintiff, C. B. Woodard, was consummated on December 23, 1949, and consisted of a letter agreement from Wallace A. Phillips to Glenn E. McClung and Jack A. McClung and Clyde Woodard, who Defendants allege is one and the same person as the Plaintiff, C. B. Woodard, herein, which letter agreement is the writing embodying all of the elements of the agreement between Plaintiff, C. B. Woodard, and Defendant, Wallace A. Phillips, all of which Defendants allege was completed prior to January 1, 1950, and that Plaintiffs seek to recover upon an instrument in no wise

a part of the original transaction between the parties to this suit."

In construing this part of the allegation in connection with the other allegations in the petition, this allegation is sufficient as a part of the allegation of fraud pleaded by appellants, because they allege a prior completed contract for which a consideration was paid, and must be construed with the allegation that no consideration was paid for the contract sued upon. Appellees excepted to this pleading on the ground that it was immaterial and irrelevant and was an attempt to vary and change the terms of the written contract sued upon and that it related to matters leading up to the execution of the final written contract which would be in violation of the parol evidence rule. We think the court erred in this ruling because fraud is a well-established exception to the parol evidence rule. 17 Tex.Jur., p. 836, Sec. 379, and authorities therein cited; 32 C.J.S. Evidence § 979, beginning at page 942, and authorities therein cited. The point is sustained.

By Points 2, 3 and 4, appellants complain of the action of the trial court in refusing to admit into evidence their Exhibits 2, 6 and 7. It is undisputed by the parties to this suit that the sum of $5,000 which appellees seek to recover was paid and the note was given by Woodard to Phillips on December 23, 1949, was paid and given for the contract to purchase the lease interest described in plaintiffs' Exhibit 1, and that appellants were not expected at that time to sign any further instrument; although, most of the evidence establishing these facts were offered on the appellants' bill of exceptions. We think they were admissible for the purpose of showing that no consideration was paid for the execution of the instruments sued upon. No one disputes the right of the appellees to attempt to prove the true consideration of the instrument sued upon. Bearing in mind that plaintiffs' Exhibit 1 shows only a consideration of $5, it would

be a harsh rule, indeed, to permit appellees to prove that they paid $5,000 in cash and executed an additional note in consideration of the instrument sued upon, and by the same token say that the appellants would not be entitled to plead and prove that no consideration at all was paid for the instruments sued upon.

Since we must view the evidence offered by appellants as true, Alvis v. McDonald, Tex.Civ.App., 282 S.W.2d 425, wr. ref., n. r. e., it is necessary to give a brief resume of the evidence as we view it, in addition to the facts as hereinabove stated. Before Woodard paid to Phillips any money and made a note, his banker called a bank in Dallas to get its appraisal of the property, and Woodard made other calls to determine definitely that there were at least three wells in production on the property at the time. If Woodard did not know that the bank in Dallas had a lien on the property, why would his banker contact it before making the loan? The circumstances surrounding the transaction between Woodard, Phillips and the banker presents circumstances from which a jury could easily find that defendants' Exhibits 2, 6 and 7 were delivered to Woodard by Phillips on December 23, 1949, and that he in turn delivered them to his banker. These instruments are such that they would create at least a strong suspicion that Phillips might have at least an equitable claim against the property for $6,000 which had been advanced by Phillips to the McClungs. Then there is the positive testimony of Phillips that he delivered these exhibits to Woodard at the time defendants' Exhibit 2 was executed. These instruments were admissible to show the true consideration for which Woodard paid to Phillips $5,000 and made the note, as well as to impeach the testimony of Woodard as to the consideration paid for the instrument sued upon, and that no further instruments were to be executed. Woodard testified that there was not anything said at the time about Phillips signing another instrument.

In McFarland v. Shaw, Tex.Com.App., opinion expressly approved by the Supreme Court, 45 S.W.2d 193, 195, the court in speaking of the exceptions to the parol evidence rule said:

" * * * However, the rule has its exceptions. It is well recognized or established that there are exceptions to the general rule which exclude parol evidence to explain written instruments, and they apply to negotiable papers as well as to other contracts. When the issue of fraud, surety, ambiguity, or want of consideration is raised, as between the original parties and those standing in the shoes of such parties or against those taking with notice, parol testimony is admissible to show the true facts. When properly presented by the pleadings and the evidence, the rule respecting the admissibility of extrinsic evidence is stated in 3 R.C.L. pp. 869 and 870, in the following language:

" 'Many of the exceptions to the parol evidence rule are quite as well settled as the general rule and require only a mere statement. It may not be contended for example, that, as between the parties to an instrument parol evidence is incompetent to show fraud, mistake, illegality, want or failure of consideration, to explain an ambiguity when such explanation is not inconsistent with the written terms, or to show that the writing is only a part of an entire oral contract between the parties, or that its obligation has been fully discharged by an oral collateral agreement. So in a controversy between the parties or others charged with notice proof may be made of a collateral agreement, which was the consideration for the instrument, or which postpones the legal operation of the writing until the happening of a contingency. And again, an instrument is to be construed, as in any other case, in the light of its

subject matter, *and the circumstances in which and the purposes for which* it was executed, which evidence is always admissible in the construction of written contracts, in order to put the court in the position of the parties.' (Emphasis added.) * * *

"This record invokes the well-settled principle of law that, unless the question of innocent purchaser for value is involved, as between the original parties and those standing in the shoes of such parties or against those taking with notice, parol testimony is admissible to show the real consideration for the note and to show that it was executed at the request of the officers of the bank, only as an accommodation note for the bank, * * *"

There is no question of innocent purchaser in the case at bar.

In the case just quoted from, the Supreme Court cited with approval the case of Megowan v. Peterson, 173 N.Y. 1, 65 N.E. 738, and quoted from such case as follows:

"We do not understand that the statute to which we have alluded was designed to change the common-law rule in this regard, which is to the effect that, as between the original parties and those having notice of the facts relied upon as constituting a defense, the consideration and the conditions under which the note was delivered may be shown." Citing authorities.

In Central Bank & Trust Co. v. Ford, Tex.Civ.App., 152 S.W. 700, 703, er. ref., the court, speaking of an exception to the parol evidence rule stated:

"The testimony did not vary or alter the contract evidenced by the note, but in effect was to show there was no such contract which could be enforced as valid."

We think the case of Bell v. Mulkey, Tex.Com.App., opinion approved by Supreme Court, 16 S.W.2d 287, 291, is almost directly in point. In this case we find the following statements:

"* * * The 'parol evidence rule' (at least when innocent purchasers are not involved) does not preclude evidence showing that a writing was not delivered 'as a present contract' or that there was never any 'concluded, binding contract' (in writing) 'entitling the party who claimed the benefit of it to enforce its terms.' Burke v. Dulaney, 153 U.S. 228, 14 S.Ct. 816, 38 L.Ed. 698.

"* * * In view of the hypothesis of 'verbal contract' made (in any event before, and according to some testimony, weeks before) the 'written order' of date September 12, 1913, was signed (as a mere 'matter of form,' according to his contentions), the knowledge gained (or imputed) in making that signature is not conclusive against him, if, indeed, it has any relevancy on the question now being considered."

The instruments excluded being offered for the purpose of showing a total lack of consideration of the contract sued upon, a prior completed contract involving the same subject matter, the contract sued upon was not intended to be a present contract, impeachment and to establish fraud, the trial court erred in excluding them. Points 2, 3 and 4 are sustained.

By Point 5 appellants complain of the action of the trial court in withdrawing the case from the jury and rendering judgment for appellees, because fact issues were raised by the pleadings and the evidence. From what has already been said, it necessarily follows that the point is well taken and must be sustained. The evidence in this case does not conclusively show that Woodard paid $5,000 in consideration of the execution of the instrument

sued upon. He did not even offer in evidence the check by which the money was paid, and Phillips denied that he received any sum of money in consideration of the execution of the instrument. A fact issue was raised by the pleadings and evidence as to whether or not the transaction that occurred on December 23, 1949, was a completed transaction. A fact issue was raised by the pleadings and evidence as to whether or not Woodard and/or his brothers-in-law secured the signing of the instrument sued upon almost eight months after the transaction on December 23, 1949, was done with the fraudulent intent to sue appellants for a refund of the money and cancellation of the note. A fact issue was raised by the pleadings and evidence as to whether or not Woodard knew of any existing liens against the property at the time he paid the $5,000 and gave his original note. Where issues of fact are made by the pleadings and evidence, there can be no instructed verdict. 41–B Tex.Jur., Sec. 298, and authorities therein cited; Alvis v. McDonald, supra.

There was also an issue of fact raised in the case on the question of waiver. Although waiver is an affirmative defense that ordinarily must be pleaded, the evidence was admitted without objection and the failure to object to the evidence on the grounds it was not pleaded, waived the pleading. If the case had been submitted to the jury and appellants had requested an issue on the question of waiver, it would have been incumbent upon the court to submit such issue because the evidence shows that after Woodard knew of the liens and litigation that Phillips carried a man to him by the name of Carson who offered to refund all his money, if he, Woodard, would release the minerals. Woodard refused, and is entirely possible that he waived his right to recovery, if any, at that time.

For the errors hereinabove pointed out, the judgment of the trial court is reversed and the cause is remanded.