J. E. SHEFFIELD, Appellant,

v.

Beulah LEWIS et al., Appellees.

No. 6856.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 9, 1956.

Rehearing Denied March 8, 1956.

M. H. Barton, E. C. Wellborn, Henderson, for appellant.

J. F. Norris Dennard, Henderson, for appellees.

FANNING, Justice.

Plaintiffs-appellees Beulah Lewis and Homer D. Irby, filed suit on November 30, 1954, against defendant-appellant J. E. Sheffield, to cancel a certain mineral deed, dated April 30, 1936, from Beulah Lewis to J. E. Sheffield, covering all of the minerals under a 22⅟₁₆-acre tract of land in Rusk County, Texas.

Trial was to a jury and all special issues submitted were answered favorably to plaintiffs, with the jury finding to the effect as follows: That J. E. Sheffield represented to Beulah Lewis that the instrument in controversy was an oil and gas lease, that Beulah Lewis believed and relied on the representation and that it was a material inducement; that Beulah Lewis did not understand the nature and effect of the instrument; that she was mistaken as to the effect of the instrument, that J. E. Sheffield possessed superior knowledge to that of Beulah Lewis as to the effect of the instrument and that her mistake was induced by concealments, misleading statements or acts of Sheffield; that the consideration was grossly inadequate; that the consideration was inadequate, that a confidential relationship existed between Sheffield and Beulah Lewis, that Sheffield concealed from Beulah Lewis the true value of the property, and concealed from her the true nature and effect of the instrument; that Beulah Lewis did not discover either the falsity of the representations or the true nature and effect of the instrument more than four years before she filed suit; that Beulah Lewis did not have knowledge of facts that would cause a reasonably prudent person to make inquiry which would have led either to the discovery of the falsity of the representations or the true nature and effect of the instrument more than four years before she filed suit. Judgment was rendered for plaintiffs upon the verdict of the jury. Defendant's motion for judgment non obstante veredicto and motion for new trial were overruled, and defendant has appealed.

Appellant's first and second points are as follows:

"1. Error of the court in refusing to instruct the jury, at the close of the testimony, to return a verdict in favor of the Appellant, since the undisputed evidence showed that appellee had knowledge of fraud, if any had been perpetrated upon her, more than four years before commencing this suit."

"2. Error of the court in refusing to set aside the judgment, and grant a judgment, in favor of the Appellant notwithstanding the verdict, since it appeared that the verdict of the jury was contrary to all the testimony in the case."

Plaintiff Beulah Lewis testified that she bought the 22⅟₁₆-acre tract from D. W. Rogers in 1935, paying part cash and giving a vendor's lien note and further agreed that Rogers could continue to draw the delay rentals under an existing lease to Magnolia Petroleum Company on the land for the balance of the life of the lease, which was five years at the time. She further testified that defendant Sheffield came to her home a few days before she signed the instrument in controversy on April 30, 1936; and that he asked her about leasing her land and that she told him that it was already under lease and that Rogers was drawing the delay rentals and that Sheffield told her "that man that sold me the land could not hold the lease." She further testified that she relied on what Sheffield told her, that he asked to see her deed and she

let him take it to have it recorded and that she agreed to lease the land to Sheffield because he said she had the right to do so and agreed to take $1.50 an acre for 20 acres. (Beulah Lewis later conveyed two acres out of the tract to plaintiff Homer D. Irby.)

Plaintiff Beulah Lewis further testified that defendant Sheffield came back on April 30, 1936, with a Notary Public and did not read the instrument to her but showed her where to sign; that she had not had any experience in oil and gas matters, but that she trusted and relied on Mr. Sheffield (who prepared the instrument and presented it to Beulah Lewis); and further testified that "I just looked on there and saw it was a lease, you know, and I was thinking he fixed it just like I told him, you know, before he fixed it. He fixed it himself, I didn't fix it."

The instrument in question is a mineral deed conveying all of Beulah Lewis' minerals in the tract. However, the following typewritten addenda is included in the instrument, to-wit:

"It is further agreed that I, J. E. Sheffield may have the right to all surface that is *required to drill* on, or to set tanks, or laying lines, or roads, or anything that may be *required to .develope this lease,* withuut cost, except crop damage." (Italics ours.)

Beulah Lewis testified further as to her lack of experience and knowledge of oil and gas matters and testified that in 1938 she wrote defendant Sheffield, since he had not paid her the delay rentals on the lease she had executed to him, and wrote him that she wanted to "lease the land over" to him. Mr. Sheffield in his deposition as to the contents of the letters said: "Well, she is complaining about her lease rental mainly." Sheffield testified that he did not answer any of the letters Beulah Lewis wrote him, "Because I didn't want to." The evidence shows that Beulah Lewis wrote Sheffield several letters, but defendant only produced two of them and did not choose to answer any of them.

The two letters written by Beulah Lewis which were produced by defendant are somewhat illiterate, not too clearly legible, and the parties can not agree as to the exact wording of same. These original handwritten letters are sent up with the record as well as the court reporter's version of their contents. We respectfully refer to the original letters for their contents. The court reporter's version of these two letters is as follows:

"Henderson
"Febury 9 1938
"Mr. J. E. Sheffield
"Listen Rogel D W say that come and had hin and Wife sign sane paper and He Have not Draw no more mny on my part Lease I will say like this I Did not think you are the will my money on my Lease and Have not pay no money at all for my Lease $31.00 Dollars all you For some rolerty. You Due me $42.00 Dollars

/2

"Foe Pass Lease From the Magnolia Ptoleum Co I did not thin you the man will Steal my Wright why I Say thes you Have not Paide For my Lease at all I Did not aBoid the check untill the Land are Paide For I and Rogel will See the Law if you Dont Pay 42.00 Dollars to me in Short For you Haven Pade no money at all For no Lease you call at my Hone in Short on the Sane Place I Live there Main co your Pruf
"Beulah Lewis
"You Write Henderson For Ny address."
"If you Dont buy my Lease I will Have Lawyer to take off Record
"Mt Enterprise
"Box 243 R F D a
"Mr. J E Sheffield
"I write aBout Lesase my Land 20 acris of Land I sold 2.00 acres pass years Roges Still Hold Lease with Magnolia Co andand was Piad Rental money 10 years and Did notifice Co you and Roges Give Forgie on my nane you Buy my Lease at $15.00 Dollars acris 20 acres of Land I can come over to my Home Monday 23

I Will Be at Home if you Dont Pay for my Lease I will Get Lawyer to Fix My Lease on Part I am Gieng Get Lawer on Roges Part the Co. Give you Foure years of Roges Money and you was Put out and you Saw me at Henderson I and you made agreement for Four years to pay Rolety just $30 Dollas I Sold you Buy years 10 the time is out

Yours truly
Beulah Lewis."

(Envelope postmarked
July 19—12 M 1951)

Beulah Lewis also in her testimony explains in detail her purpose in writing these letters.

It is clearly apparent from the record that plaintiff Beulah Lewis was an ignorant colored woman who had very little knowledge or understanding of oil and gas matters. It is also clearly apparent from the record that Sheffield was a man experienced in oil and gas matters and possessed vastly superior knowledge to that of Beulah Lewis as to the nature and effect of the instrument in question.

The record further reveals that Beulah Lewis (Martin) and her then husband executed an oil and gas lease on the tract in question in 1941, to Curtis Vise, which lease was released in 1951. Beulah Lewis testified that at the time she executed this lease (the Vise lease in 1941) she thought she owned the minerals in controversy.

The record further shows that in September 1954, Beulah Lewis executed an oil and gas lease to Herman Whiteherst on the tract in question, and also executed a mineral deed to Whiteherst in September 1954, to an undivided 10 acres interest under the tract in question.

There was also testimony to the effect that Mr. Whiteherst, discovering the mineral deed from Beulah Lewis to Sheffield being on record, came to Beulah's house about three weeks later and told her that Mr. Sheffield was claiming her minerals and asked her for his money back. She testified to the effect that she wrote him a check (rescinding the Whiteherst lease and mineral deed) and that the following Monday she employed an attorney who filed this suit against Sheffield. She further positively testified that she did not know that Sheffield was claiming her minerals until Whiteherst told her, which was in October 1954.

The testimony further showed that Sheffield paid $30, less $1 for recording Beulah's deed to the tract, for the instrument in question, which is a mineral deed to all of the minerals, yet which contains a typewritten addenda which refers to it as "this lease," and the testimony further shows that Sheffield drew $88.24 delay rentals from the Magnolia Company lease then existing on the land.

The record further shows that no wells have been drilled on the tract in question and no production had been had therefrom.

There was apparently some confusion in the questions asked by appellant's counsel and some of the answers given by the various witnesses, including Beulah Lewis, with respect to the difference between minerals, royalty and leases, all of which is more fully shown by the record. Appellant points out in his brief these inconsistencies, as for example, he points out this testimony from Beulah Lewis, to-wit: "Q. Did you understand that this was in a fact a mineral deed? A. Yes, sir, that is what I was thinking it was, really." Appellant stops with the above question and answer; however, appellees take the position that Beulah Lewis, an ignorant colored woman, misunderstood the question and later corrected this testimony by the testimony then immediately following, which was as follows:

"Q. Do you understand the question. Did you understand at the time you executed the instrument there on April 30, 1936, that that instrument was a mineral deed and not an oil and gas lease? A. Yes, sir, I was thinking that it was just a lease, that is what I was thinking.

"Q. Well, do you mean by that that you did not know it was a mineral deed or that you did know? A. No, I mean by that that I didn't know the royalty was in it. I just mean that I just had it in mind it was just a lease, just a lease, that is what I am talking about."

Appellant also points out what he deems inconsistencies in Beulah's testimony as he put it in a question framed by his counsel as to when Beulah first found out when she had been *"frauded"* as appellant's counsel put it. Appellees' brief quotes her subsequent testimony at length which explains that she first found out that she had been defrauded by Sheffield when Whiteherst told her (in October 1954) that Sheffield had a deed to her minerals. Irrespective of any and all inconsistencies in any prior testimony, Beulah Lewis testified positively to the effect that the *first notice* she had that Sheffield was claiming he had a mineral deed to her minerals was when she made the refund to Whiteherst in October 1954, when Whiteherst told her about it. She also testified that she had never had any occasion to check the deed records as she thought the lease she had supposedly given Sheffield had expired.

Beulah Lewis, in accounting for the fact that she did not know the instrument was a mineral deed (instead of the lease she thought it was) until October 1954, also testified that Sheffield told her that the lease had expired. We quote from her testimony as follows: "Well, I told him that was what I wanted him to do when he came to me. *I saw him* (referring to Sheffield) *at the Courthouse and he said it had run out,* and I went on ahead with it myself and leased it to Mr. Vise and later I leased it to Mr. Whiteherst." The above testimony would show that Sheffield by telling Beulah Lewis that the lease had "run out" had lulled her to sleep and into a sense of false security. She, being lulled to sleep by Sheffield's statement, thereafter leased her land to Vise and later to Whiteherst; and when informed for the first time by Whiteherst in October 1954

of Sheffield's mineral deed, she promptly filed this suit.

The testimony, circumstances in the case, and the logical inferences therefrom, also show that appellee Beulah Lewis and appellant Sheffield were not dealing solely at arm's length but that a relationship of trust and confidence existed between the parties, and the jury found in response to Special Issue No. 11, upon sufficient evidence, that the actions, conduct and representations of J. E. Sheffield were such as to cause Beulah Lewis to place confidence in and rely upon his representations.

The recent case of Alvis v. McDonald, by this Court, 282 S.W.2d 425, 428, writ ref., NRE, opinion by Justice Davis points out the distinction in cancellation cases where the instrument in question is prepared by the grantee, and quotes from Hutchins v. Birdsong, Tex.Civ.App., 258 S.W.2d 218, writ ref., NRE. We quote from Alvis v. McDonald, supra, as follows:

"If the evidence had shown that appellants as grantors had prepared or caused the instrument they signed to be prepared under their instructions, the position of the trial court and of the appellees would be correct, but there is a well-recognized exception to that rule wherein the deed or instrument sought to be cancelled was prepared by the grantee or under his instructions. As pointed out by Chief Justice Hall in the case of Hutchins v. Birdsong, Tex.Civ.App., 258 S.W.2d 218, 221, w/r, n.r.e., where the deed was prepared by the grantee or under his instructions, the grantor is not charged with notice of any fraudulent insertion or omission until such time as conditions arise to put grantor on notice of such fraud, and the mere signing and filing of the instrument of more than 12 years prior to the filing of suit for cancellation is not sufficient to charge one with notice of the contents of the instrument as a matter of law. In speaking of the exception we quote:

"'The burden of appellants' contention is that, under the facts in this case, appellee, grantor in the deed from him and Amos Ward to Belitsky, is charged, as a matter of law, with knowledge of the contents of the deed. They cite the cases of Kennedy v. Brown, Tex.Civ.App., 113 S.W.2d 1018 (writ dismissed) and Kahanek v. Kahanek, Tex.Civ.App., 192 S.W. 2d 174.

"'We have been requested by the appellants to discuss those two cases in relation to the facts of this case. Those cases hold that as a general rule a grantor is charged with knowledge of the provisions in his deed; and that limitation begins to run against any action by him to correct a mistake in his deed from the date of the execution and delivery of the instrument. We recognize that as being a general rule, but both of these cases cited above reveal that they each recognize an exception to that rule. This exception is clearly set out in the Kennedy case (113 S.W.2d 1020) as follows: "It is equally well established by the authorities that in such cases limitation does not begin to run until the mistake is discovered or should have been discovered by the exercise of such diligence as would be exercised by a person of ordinary care and prudence." Citing cases. Great stress in those cases is laid upon the fact that the grantor in each case had the deed prepared and delivered to the grantee. And in the Kennedy case it is stated further: "It is neither alleged nor shown by the evidence that appellants did any act or thing which could be construed as an assurance to appellee (grantor) that the deed was written as contemplated by the contract (reserving the mineral interest) or that could have had the effect of *lulling appellee into a sense of security in reference to the matter.*" (Italics ours.) We think that the above holding is also the holding of the court in the Kahanek case, which cites the Kennedy case as a basis for its holding. *Thus it is clear that in the above cases had the facts shown that the grantees in the deeds involved in those cases had done any act or made statements which would have been sufficient to lull the grantor to sleep, then it seems to us that limitation under the exception set out above would not have begun to run against the grantor until they had discovered the mistake.'*" (Italics ours.)

Also in the Hutchins v. Birdsong case, supra, 258 S.W.2d at page 222, it is further stated:

"The trial court heard these facts and circumstances surrounding the transaction, and concluded that the evidence was sufficient to excuse Birdsong, a technical grantor in the deed to Belitsky, from the harsh rule that would charge him as a matter of law with knowledge of the contents of the deed he signed. It is our opinion that the evidence is sufficient to sustain the finding of the trial court with regard to tolling the statute of limitation * * *. There was nothing to call his attention to the misrepresentations of Belitsky, that his mineral rights had been taken care of in the deed prepared by Belitsky's attorney, until Birdsong saw drilling operations in the vicinity of the land."

In 7 Tex.Jur., Sec. 41, page 952, it is further stated:

"The period of limitation begins to run from the time of discovery of the fraud, or the time when it ought to have been discovered by the exercise of proper diligence and inquiry in the circumstances. *Actual knowledge of the fraud is necessary, however, when a relationship of trust exists between the parties.* A party will not be allowed to avail himself of the statute of limitations if by his misrepresentation or fraud he has prevented the other party to the transaction from ascertaining a knowledge of his right to the relief sought." (Italics ours.)

In Franklin County v. Tittle, Tex.Civ. App., 189 S.W.2d 773, 775, wr. ref., it is stated:

"Where a relationship of trust and confidence exists between the parties, the rule is that limitation starts to run only from the time of actual discovery of the fraud. Moore v. Waco Bldg. Ass'n, 19 Tex.Civ.App. 68, 45 S.W. 974; 43 Am.Jur. 209, Sec. 445; 22 R.C.L. 510, Sec. 196."

■ Any and all inconsistencies, if any, in the testimony of Beulah Lewis and the illiterate letters written by her, which might be inconsistent with her other testimony in the case, were for the jury to reconcile and pass on as stated in Tunnell v. Van School Dist. No. 53, Tex.Civ.App., 129 S.W.2d 825, 829, error dis., judg. corr., as follows:

"The fact that other testimony of Wells may be inconsistent with the above statements does not take from the whole of his testimony its probative force as regards the construction the jury decided to place upon it. It is for that fact-finding body to reconcile such inconsistencies. Norwich Union Indemnity Co. v. Wilson, Tex. Civ.App., 17 S.W.2d 68, 76; Austin Fire Ins. Co. v. Adams-Childers Co., Tex.Com.App., 246 S.W. 365."

■ Appellant's first point, contending that the trial court erred in not instructing a verdict in favor of appellant because the undisputed evidence showed that appellees had knowledge of the fraud (if any) more than four years prior to the commencement of the suit in question, is overruled. It is our view that there was sufficient positive evidence of probative force to raise fact issues for the jury to pass on with respect to this matter, and that it was within the jury's province to reconcile the inconsistencies, if any, in the evidence.

■ Appellant's second point, contending that the trial court erred in refusing to set aside the judgment and in not rendering judgment for appellant non obstante veredicto, because the verdict of the jury was contrary to all the testimony, is overruled. After carefully reviewing the record, it is our opinion that all of the findings of the jury are sufficiently supported by evidence of probative force and that the judgment of the trial court is a correct judgment on the merits of the case.

Appellant's fourth point reads as follows:

"4. This case should be reversed because the Special Issues, No. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17 of the Court's charge are not based upon the evidence before the court, and the answers thereto are not supported by the evidence before the Court."

■ Appellant's fourth point is clearly multifarious. Hudspeth v. Hudspeth, Tex. Civ.App., 206 S.W.2d 863; Carnes v. Kay, Tex.Civ.App., 210 S.W.2d 882. However, as heretofore stated, we think that all of the findings of the jury were sufficiently supported by the evidence in the cause. Appellant's fourth point is overruled.

■ Appellant's third point reads as follows:

"3. The court erred fundamentally in often commenting on the evidence, in the presence of the jury, especially the testimony of appellee, Beulah Lewis."

Appellant has not brought forward any bill of exception on this matter; however, the matter apparently complained of is shown by the record as follows:

"The Court. I don't think she understood your question, Mr. Dennard.

"The Court. Rephrase your question or ask it again. Now listen carefully to what the attorney asks you.

"The Court. All right. Now you listen to Mr. Barton's question, now he asked you and if you don't understand let him ask it again.

"Mr. Barton. (To Court Reporter) Will you please read the question back?

"The Court. Well, just strike the question, because you didn't intend to ask her what you asked her. You asked her whether or not he intended to buy half her lease.

"Mr. Dennard. Your Honor, I have not taken exception to the action of the Court in that regard because Counsel for Plaintiff is well aware that this witness does her best to answer questions. * * * and Counsel for Plaintiff appreciates the action of the Court in so trying to keep her on the point and instructing the jury that it is not to be considered comment by the Court upon the credibility or weight or anything pertaining to the veracity of the testimony.

"The Court. That is all true, Gentlemen, and that is my occasion for suggesting to the jury and instructing them not to be in any manner prejudiced by the action of the Court to have her answers responsive to the questions."

Appellant made no objection to any of the remarks made by the trial court and there is no showing that the remarks of the trial court were reasonably calculated to and probably did prejudice the rights of appellant in any material matter of any import. In Texas Mexican R. Co. v. Bunn, Tex. Civ.App., 264 S.W.2d 518, 527, it is said:

"The record discloses several colloquies between counsel for appellant and the trial judge, and it is here contended that in such conversations the trial judge made remarks which amounted to comments upon the evidence, and which were prejudicial to appellant. The cold written record does not bear out the claims of prejudice. A trial judge is necessarily allowed some discretion in expressing himself while controlling the trial of a case, and a reversal of a judgment should not be ordered unless a showing of impropriety, *coupled with probable prejudice, is made.*" (Italics ours.)

As we view it, the able and learned trial court was merely trying to assist counsel and the parties in developing the facts of the case in an orderly and intelligent manner. We do not think that the remarks of the trial court were improper under the circumstances. Appellant by failing to object to the remarks of the trial court also waived the alleged error. 41–B Tex.Jur., Sec. 61, p. 87. Appellant's third point is overruled.

Appellant's fifth point reads as follows:

"5. The case should be reversed because of the misconduct of Appellee's attorney, Mr. Norris Dennard, when he wrote upon a blackboard, in the absence of the Court, and in the presence of the jury, certain references to the evidence in the case, that had gone before the jury."

■ Appellant in the statement under this point does not give the wording or substance of the writing complained of but says that the attorney who wrote it immediately erased it upon the arrival of the judge in the courtroom; that appellant objected to it and the trial court sustained appellant's objection and instructed the jury not to consider same for any purpose, and the trial court further instructed appellees' counsel that if he desired to use the blackboard in argument of the case he should erase what he had written on the blackboard. Not having the wording or substance of the writings on the blackboard legally and properly before us (appellees make the statement in their brief that the writings in question were the dates and types of the instruments which had been introduced in evidence), we would certainly be unable to say that such writings were improper and prejudicial to such an extent that they constituted reversible error, especially in view of the trial court's instruction to the jury to disregard same. Appellant's fifth point does not reflect reversible error under the record in this case, and is overruled.

Appellant's sixth point reads as follows:

"6. Appellee's attorney, Mr. Norris Dennard, was guilty of gross mis-

conduct in his closing argument to the jury when he made the following remarks:

" 'Gentlemen, this instrument that says that it is a lease, is a mineral deed, is a wolf in sheep's clothing, and no wolf ever cut an innocent lamb out of a flock of sheep quicker and surer than this instrument cut all the oil, gas and other minerals from under Beulah's land forever, and no lamb was ever ·more innocent than Beulah was at the time she signed this instrument as to the nature and effect thereof.' "

Appellant's objection to the above argument was as follows:

"Your Honor, I object to that line being prejudicial to the jury—and take my exception."

As shown by the record, appellant objected and excepted in the same statement and no ruling was actually made by the trial court on the objection. Also the record reveals that appellant did not request the trial court to instruct the jury not to consider the argument in question.

 It is well-settled law in Texas that the facts of a case may in argument be related to history, fiction, personal experience, anecdotes, Bible stories or jokes. 41-B, Tex.Jur., Sec. 222, p. 264.

It appears to us that the argument in question is primarily directed at the instrument in question rather than at the appellant personally. The instrument in question is in fact a mineral deed, but it does have a typewritten provision in it referring to it as "this lease."

However, if the argument in question was improper, it is our opinion that same was not reasonably calculated to cause and probably did not cause the rendition of an improper judgment in the case; and if error, would not constitute reversible error. Rules 434 and 503, Texas Rules of Civil Procedure; Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596; Benefit Ass'n of Ry. Employees v. Dahn, Tex.Civ.App., 272 S.W.2d 762, error ref., NRE; Roosth & Genecov Production Co. v. White, Tex.Civ.App., 281 S.W.2d 333, error ref., NRE. Appellant's sixth point is overruled.

The judgment of the trial court is affirmed.