**Joe BLALACK, Appellant,**

v.

**Harry L. JOHNSON, Appellee.**

No. 6898.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 6, 1956.

Hurst & Burke, Longview, for appellant.

Smith & Smith, Tyler, for appellee.

FANNING, Justice.

Harry L. Johnson, a licensed land surveyor, sued Joe Blalack to recover the value of services rendered by him in making certain surveys in Harrison County, Texas, preparing field notes, and platting the same, which services and work of Johnson were used by Blalack in forming a pooled gas unit in Harrison County, Texas. (The suit was originally filed in Harrison County, Texas. On defendant's plea of privilege the cause was transferred to Gregg County, Texas.)

Defendant's motion for instructed verdict was overruled.

Six special issues were submitted to the jury. The issues and the jury's answers thereto are as follows:

"*Special Issue No. 1:*

"Do you find from a preponderance of the evidence that Harry L. Johnson made a survey of lands in the Yarborough and Arnold Surveys in Harrison County, Texas, and incorporated the same in a proration plat of the Bartlett-Bailey 576 acre pooled unit?

"Answer yes or no.

"Answer: *Yes.*

"*Special Issue No. 2:*

"Do you find from a preponderance of the evidence that Joe Blalack used

to his benefit the survey and plat work rendered by Harry L. Johnson in making a survey and proration plat for the Bartlett-Bailey 576 acre pooled unit in South Hallsville Field, Harrison County, Texas?

"Answer yes or no.

"Answer: *Yes.*

"*Special Issue No. 3:*

"What sum of money, if any, do you find from a preponderance of the evidence to be a reasonable value of such services and work performed by plaintiff, Harry L. Johnson, in the survey and preparation of the plat and work covered by the preceding question, to the defendant, Joe Blalack's benefit, if any you have so found?

"Answer in dollars and cents, if any.

"Answer: *$1264.00.*

"*Special Issue No. 4:*

"Do you find from a preponderance of the evidence that Joe Blalack knew that Harry L. Johnson performed a survey of lands in the Yarborough and Arnold Surveys in Harrison County, Texas, expecting to be paid compensation therefor by the said Joe Blalack?

"Answer yes or no.

"Answer: *Yes.*

"*Special Issue No. 5:*

"Do you find from a preponderance of the evidence that a period of two years has elapsed from October 5, 1953, and the date of the filing of the Plaintiff's First Amended Original Petition?

"Answer yes or no.

"Answer: *Yes.*

"*Special Issue No. 6:*

"What do you find from a preponderance of the evidence to be a reasonable attorney's fee for the services of the attorneys for plaintiff for prosecuting this cause, if any?

"Answer in dollars and cents, if any.

"Answer: *$350.00.*"

Defendant's motion for judgment non obstante veredicto was overruled. The trial court entered judgment for plaintiff (in the amounts found) on the verdict of the jury and "on such additional considerations and findings as were authorized by law, having been had and made" as stated in the judgment of the trial court.

Defendant Blalack's motion for new trial was overruled and he has appealed.

■ Appellant's first point reads as follows: "The trial court erred in rendering its judgment dated Jan. 20, 1956." This point is rather general. However, in his statement under this point appellant states that the verdict of the jury was filed December 13, 1955, the term of court ended December 31, 1955, the judgment was rendered January 20, 1956, that there was no extension of the term to dispose of the cause, and appellant apparently takes the position that the judgment of the trial court was void by reason thereof. We think this contention is not well taken. Under art. 199, subd. 124, V.A.C.S., the District Courts of Gregg County, Texas have continuous terms, and the term of the 124th District Court, at which this case was tried, began on the 1st Monday in November, 1955, and continued until the next succeeding term, which began on the 1st Monday in January, 1956. Subdivision (j) of Rule 330, Texas Rules of Civil Procedure, is applicable to Gregg County, Texas. This court has held that under this rule a District Court with continuous terms could render judgment at the next term succeeding that at which the case was tried without the necessity of extending the term. See Pelham v. Sanders, Tex.Civ. App., 290 S.W.2d 684, and authorities cited therein. Appellant's first point is respectfully overruled.

Appellant's points 2 and 6 read as follows:

"*Point 2*

"The Trial Court erred in not sustaining Defendant's Motion for Instructed Verdict at the close of Plaintiff's testimony. (Germane to Assignment of Error No. 2)

"*Point No. 6*

"The Trial Court erred in rendering judgment for Plaintiff upon quantum meruit. (Germane to Assignment of Error No. 17)."

Under his statement and argument under these two points (among other things) appellant takes the position that plaintiff in his original petition filed January 28, 1953, filed a suit on the contract (without an additional count on quantum meruit), that the quantum meruit count filed in plaintiff's first amended petition on December 6, 1955, came too late and was barred by the two-year statute of limitations.

Article 5539b, V.A.C.S., reads as follows:

"Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence. Provided, however, when any such amendment or supplement is filed, if any new or different facts are alleged, upon application of the opposite party, the court may postpone or continue the case as justice may require. Acts 1931, 42nd Leg., p. 194, ch. 115, § 1."

In Theriot v. Smith, Tex.Civ.App., 263 S.W.2d 181, 183, w/dis., where the defendant claimed that plaintiff's plea of estoppel filed more than two years since the acts causing the estoppel occurred was barred, the court held as follows:

"Appellee contends that since estoppel was first raised by Appellant in his 2nd Amended Petition, at which time more than two years had elapsed since the time of the purported promise, that the claim was barred by the two year Statute of Limitations, Vernon's Ann.Civ.St. art. 5526. This contention was overruled in view of Article 5539b, Tex.Civ.Stats. Under this statute it has been repeatedly held that an amendment of pleading setting up additional grounds for liability, but upon the same debt and between the same parties, does not make a different transaction so as to prevent tolling of limitations. An excellent discussion of this question is made by Justice Hale in O'Quinn v. Scott, Tex.Civ.App., 251 S.W.2d 168, writ of error refused. See also: Thompson v. Van Howeling, Tex.Civ.App., 49 S.W.2d 961; First State Bank & Trust Co. of Rio Grande City v. Ramirez, 133 Tex. 178, 126 S.W.2d 16; Moore v. City of Beaumont, Tex.Civ.App., 195 S.W.2d 968; and 146 Tex. 46, 202 S.W.2d 448."

The plaintiff in his amended pleading in this cause sued the same defendant for the same debt that he sued for in his original petition; the only difference in his amended petition was that he not only sued on the contract alleged in his original petition but that he added an additional pleading contending that he was also entitled to said debt on a quantum meruit basis. Under the authorities cited above it is our opinion that the quantum meruit count in plaintiff's first amended petition did not involve a different transaction from plaintiff's original cause of action for debt and that same was not barred by the statute of limitations. Appellant's contentions in

this respect, as well as his other contentions under Points 2 and 6, we think are not well taken. Appellant's Points 2 and 6 are respectfully overruled.

Appellant's third point reads as follows:

"*Point* 3

"The Trial Court erred in not disregarding Findings to Special Issues 1, 2 and 4, and in rendering judgment based thereon. (Germane to Assignments of Error No. 5, 6, 7, 8, 9, 10, 11, 12, 13 and 14.)"

■ We are of the view that the above point is multifarious and not in accordance with the briefing rules. Sheffield v. Lewis, Tex.Civ.App., 287 S.W.2d 531, 537; Hudspeth v. Hudspeth, Tex.Civ.App., 206 S. W.2d 863; Carnes v. Kay, Tex.Civ.App., 210 S.W.2d 882. It is our further view that a full consideration of the point and the various contentions made thereunder will reveal that same are not well taken, as hereinafter stated.

As we understand appellant's contentions under his third point he apparently takes the position (among other contentions) that there was "no evidence" to support the findings of the jury in response to special issues Nos. 1, 2 and 4.

Some of the pertinent facts relative to this cause are as follows:

N. L. Webster, an official of Delta Drilling Company, testified that in 1953 J. F. Wright had a farm-out agreement with Delta concerning certain lands in Harrison County, Texas, and that Wright requested Delta to approve the assignment of his rights under such farm-out agreement to Joe Blalack. The written farm-out agreement, which is found in the record, provided among other things that Delta was the owner of certain oil, gas and mineral interests described therein; that Wright had requested a farm-out with permission to utilize a dry hole theretofore drilled on the B. P. Bailey lease; that upon Wright's acceptance of the agreement and deposit of a cashier's check in the sum of $5,000 as a guarantee that Wright would perform his obligations and furnish copies of the application to the Railroad Commission of Texas for a permit to conduct drilling, deepening and reworking operations, together with copies of the well location plats, and copies of the permit granted by the Railroad Commission, within a limited time, and to begin operations within certain time, furnish information to the Delta Drilling Company that after the completion of such work and production therefrom, Delta Drilling Company would assign without warranty to J. F. Wright certain overriding royalties to it from any production therefrom. The agreement required J. F. Wright to furnish and pay for all things necessary in performing the drilling, deepening, and reworking operations.

The record shows that there had been a previous letter agreement between J. F. Wright and Delta Drilling Company dated August 3, 1953, mentioned in a letter from J. F. Wright to Joe Blalack, dated August 5, 1953, in which it is recited that there is attached a proposed farm-out letter from Delta Drilling Company to J. F. Wright dated August 3, 1953, and also a letter from Mr. Cary M. Abney, an attorney, suggesting certain changes to be made in the farm-out letter, in which letter the following language is used:

"I agree to use my best efforts to secure the proposed changes in the farm-out letter, and when final draft is executed and delivered to me, I agree to assign to you all of my rights under the farm-out, and to execute such assignments as may be necessary, for a consideration of $2,100.00 to be paid in cash and an overriding royalty of $\frac{1}{32}$ of $\frac{7}{8}$ of all oil and gas produced and marketed from the leases to be assigned under the Farm-out.

"You are to assume all obligations imposed upon me by the Farm-Out, including but not limited to the deposit of

$5,000.00, but you are not obligated hereunder unless and until the title is approved by Cary M. Abney to all of the Bailey & Bartlett lease except the one acre and three acres excepted from the opinion of Cary M. Abney

"Yours truly,
"s/s J. F. Wright
"J. F. Wright

"The above correctly states our agreement, and I accept and agree to all of the terms stated above.

"/s/ Joe Blalack
"Joe Blalack"

On August 18, 1953, J. F. Wright and Joe Blalack joined in a letter request to Delta Drilling Company, asking permission for J. F. Wright to assign and transfer to Joe Blalack all of the rights and benefits under the farm-out agreement between Delta and J. F. Wright dated August 6, 1953, in which it is said, "The undersigned Joe Blalack, joins herein and agrees upon approval of this request to assume and perform all of the duties and obligations placed upon J. F. Wright by said letter agreement. Joe Blalack acknowledges that he has examined a true copy of said agreement and is thoroughly acquainted with all of the provisions thereof." This was consented to by Delta Drilling Company by Vice-President, Chris Zeppa. On August 18, 1953, J. F. Wright assigned to Joe Blalack all of his interests in the oil and gas leases covered by the farm-out agreement between he and Delta Drilling Company, in which it is recited that Wright will execute and deliver assignments of all of his interest, except 1/32 of 7/8 of all of the oil and gas produced by the assignee under the leases which he might earn under the farm-out agreement, and it is recited the assignee (Blalack) is to pay the assignor (Wright) the sum of $2,100 when Cary M. Abney approved the title to the interests therein described; that the assignee agrees that he will assume all of the obligations imposed on the assignor by the terms of the farm-

out agreement, etc. The agreement further provides, "It is further agreed that all operations conducted by Assignee upon the property affected by said farm-out letter shall be under the direction of Assignee and at his sole cost, risk, and expense, and this agreement shall never be construed as creating a partnership or joint enterprise between Assignee and Assignor, and Assignor shall never be liable for any debt, claim, or cost of action of any kind resulting from or arising out of Assignee's operation upon the property covered by said leases."

Hon. Cary M. Abney, an attorney at Marshall, Texas, testified that he was acquainted with Mr. J. F. Wright, Mr. Joe Blalack and Mr. Harry L. Johnson, and testified that he represented J. F. Wright in the transaction between him and Delta Drilling Company concerning a farm-out agreement dated August 3, 1953, and that he wrote the letter of August 5, 1953, from J. F. Wright to Joe Blalack; that he represented both Mr. Blalack and Mr. Wright in the transaction; that he started out with Mr. Wright and that when Mr. Blalack got in he examined the title for Mr. Blalack and advised him about different things in connection with it; that Mr. Blalack formed two units, the first one was called the Bartlett-Bailey Gas Unit No. 1, consisting of about 576 acres in the South Hallsville Field in Harrison County, Texas; that in the creation of the Bartlett-Bailey unit which was created by Mr. Blalack, it was necessary that certain surveying be done, that field notes be prepared, which had to be filed with the Railroad Commission of Texas, and that it was also necessary to do that for the pipeline company that purchased the gas. Mr. Abney further testified that he was not present when Mr. Johnson was employed. Mr. Abney was asked the following question, "Do you know whether or not Mr. Johnson did any work in connection with the preparation of the field notes and plats?", to which he answered, "He did. I didn't see him surveying on the ground, but he prepared the field notes and

the plat and they were sent to my office." That he heard discussion of the work between Johnson and Blalack, "Both of them talked to me about it, Mr. Blalack and Mr. Johnson, too. Whether they were both there at the same time I don't recall. I discussed the survey with them and I told Johnson what I wanted done, as I recall." He testified that Blalack paid him for his services and he thought he was acting for Blalack. On October 6, 1953, Mr. Abney sent a letter to Delta Drilling Company, with a carbon copy thereof to Mr. Harry L. Johnson, saying that Mr. Blalack had arranged with Harry Johnson to survey the unit, including the well he was then completing, and to prepare the necessary plat, and requesting Delta Drilling Company to deliver the abstracts covering the property to Mr. Johnson, and on October 9, 1953, Delta Drilling Company sent a letter to Harry L. Johnson, pursuant to instructions from Mr. Abney in his letter of October 6, 1953, and handed to Johnson the abstracts mentioned in Mr. Abney's letter to Delta Drilling Company, and a copy of the letter was sent to Mr. Cary M. Abney at Marshall, Texas.

Mr. Harry L. Johnson, appellee, testified that he did survey work for Joe Blalack in Harrison County, Texas, starting October 13, 1953; that the same was in the South Hallsville Field, and he prepared field notes in connection therewith, and that he prepared a plat, all of which he sent to Mr. Cary M. Abney; that he had a conference with Mr. Joe Blalack in Mr. Abney's office at Marshall, Texas; that Mr. Blalack was present at the time Mr. Abney gave instructions about what to do in connection with the survey and plat.

Mr. Johnson testified that he made the survey, prepared field notes and a plat of the area included in the proration unit.

On November 9, 1953, *Joe Blalack sent a letter to Delta Drilling Company, to which was attached field notes of the unit prepared by Harry L. Johnson, and a copy* *of a letter from Cary M. Abney to the Railroad Commission of Texas, in which it is stated that there accompanied the letter a "plat of Mr. Harry L. Johnson, engineer, who surveyed the unit,"* and a letter to the Railroad Commission of Texas from Douglas E. Procter, Jr., concerning the area from which the well was producing, *Mr. Blalack also sent in said letter to Delta a plat of the unit signed by Harry L. Johnson, registered civil engineer, which was attached to an affidavit by J. F. Wright concerning the unit shown on the map, in which affidavit J. F. Wright swore that he was employed by, or associated with Joe Blalack in the capacity of agent* and that he had knowledge of all of the facts stated in affidavit which was made to the Railroad Commission of Texas as evidencing the existence of unitization agreement covering interests referred to.

Joe Blalack testified that he reworked the well and that it was necessary to get plats and maps and the proration allowable from the Railroad Commission before he could produce gas from the well. *Mr. Blalack identified the letter which he had written to Delta Drilling Company on November 9, 1953, to which was attached the affidavit of J. F. Wright and the map signed by Harry L. Johnson. This is the letter above described which also had attached to it the field notes prepared by Harry L. Johnson and other attachments.*

Appellant Blalack denied employing Johnson to do any surveying work for him and contends that Johnson was doing the work for J. F. Wright, that same was Wright's obligation, that neither Wright nor attorney Abney were his agents with authority to employ Johnson to do the work for him. He also takes the further position that because Johnson sent a bill for such services to J. F. Wright on November 1, 1953, that same was inconsistent with any claim against Blalack and that therefore as a matter of law by reason thereof Blalack should not be held liable for such bill. (J. F. Wright was deceased

at the time of the trial). Mr. Johnson testified that he mailed the statement to J. F. Wright at Mr. Wright's request. He further testified that he wrote Mr. Blalack calling on him to pay the bill. Mr. Johnson also testified that in the early part of 1954 he had a conversation with Mr. Blalack in his office at Longview, Texas, where he discussed his work and the bill in question and testified that Mr. Blalack said that his bill was "too high" but that such objection was the only objection raised to the bill by Mr. Blalack at that time and that Mr. Blalack never raised any contention with him that the bill was supposed to be Wright's bill until after the lawsuit was filed.

■ Appellant in his brief also points out what he deems to be various inconsistencies in the testimony of Mr. Johnson. We have carefully considered all these matters and it is our view that any and all inconsistencies, if any, in the testimony of appellee Johnson and the sending of the bill in question to Wright instead of to Blalack, which might or might not be inconsistent with his other testimony in the case in view of his explanation of why he sent the bill to Wright, were matters for the jury to properly reconcile and pass on as stated in Tunnell v. Van School Dist. No. 53, Tex. Civ.App., 129 S.W.2d 825, 829, error dis. judg. cor., as follows:

"The fact that other testimony of Wells may be inconsistent with the above statements does not take from the whole of his testimony its probative force as regards the construction the jury decided to place upon it. It is for that fact-finding body to reconcile such inconsistencies. Norwich Union Indemnity Co. v. Wilson, Tex. Civ.App., 17 S.W.2d 68, 76; Austin Fire Ins. Co. v. Adams-Childers Co., Tex.Com.App., 246 S.W. 365."

■ We have carefully reviewed the evidence and it is our opinion that there was evidence of probative force to support the jury's findings in response to special issues Nos. 1, 2 and 4. It is our further opinion that the evidence is sufficient to support the findings of the jury with respect to special issues Nos. 1, 2 and 4.

The rules of law with respect to recovery upon contracts on a quantum meruit basis are well stated by the Commission of Appeals of Texas in the cases of Colbert v. Dallas Joint Stock Land Bank. In the case decided March 3, 1937, reported in 129 Tex. 235, 102 S.W.2d 1031, 1034, opinion by Commissioner Smedley, opinion adopted by the Supreme Court, it was stated:

"Such being the rule in this state, the allegations in the petition, the substance of which has been set out, state a case for recovery of the value of the services performed by Colbert in procuring Carothers as a purchaser of an undivided one-half interest in the land, although Colbert undertook in his agreement with Gay to procure a purchaser for the entire interest. The allegations in the petition as to the authority of Gay to bind the bank by the contract of employment are not essential to the right of recovery on quantum meruit. The right does not grow out of the contract, but is independent of it. It is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted. 5 C.J. p. 1389, § 21; 28 R.C.L. pp. 668, 669, §§ 3, 4. *If the essential allegations of fact appearing in the petition are established, that is, that valuable services were rendered by Colbert for the bank and that the bank knowingly accepted them, or the benefit of them, the value of such services may be recovered on quantum meruit even though the contract of employment is unenforceable on account of Gay's want of authority to make it or for some other reason.* Henrietta National Bank v. Barrett (Tex.Civ.App.) 25 S.W. 456 (application for writ of error refused); Rogers-Hill & Co. v. San

Antonio Hotel Co. (Tex.Com.App.) 23 S.W.2d 329."

Also the Colbert case again reached the Supreme Court of Texas and an opinion was written in the case on April 30, 1941, by Commissioner Smedley, which opinion was approved by the Supreme Court, and reported in 136 Tex. 268, 150 S.W.2d 771, 773, wherein it was stated:

"In that opinion (referring to its previous opinion, 129 Tex. 235, 102 S.W.2d 1031) the conclusion was expressed that the fact that Colbert was employed by Gay to procure a purchaser of the ranch is relevant in support of the action on quantum meruit as it tends to prove that the services were rendered for the bank, citing Henrietta National Bank v. Barrett, Tex. Civ.App., 25 S.W. 456, application for writ of error refused, and further that if valuable services were rendered by Colbert for the bank and the bank knowingly accepted them or the benefit of them, the value of such services may be recovered on quantum meruit, even though the contract is unenforceable on account of Gay's want of authority to make it or for some other reason.

"(1) We quote from Judge Speer's opinion in Rogers-Hill & Co. v. San Antonio Hotel Co., Tex.Com.App., 23 S.W.2d 329, 330, cited in our former opinion: 'The principle is well established that, where one receives a benefit by accepting the services of another, even though performed in pursuance of an invalid or illegal contract, nevertheless such person is bound upon the plainest principles of equity for the reasonable value of such services.'

"(2) *In view of the rules so announced, the fact that Gay was without authority to employ Colbert neither places Colbert in the status of a mere volunteer nor denies him the right to recover on quantum meruit.*

"(3) *The important question in the case is whether the Land Bank, with knowledge of the services performed by Colbert in an effort to procure a purchaser of the bank's land, accepted his services or the benefit of them. The jury found that the Land Bank did so accept Colbert's services and in our opinion its findings are supported by evidence."* (Interpolation and emphasis ours.)

■ It is undisputed that Johnson performed the surveying and platting work which was used by Blalack before the Railroad Commission for the direct benefit of Blalack. Although Blalack denied the agency of attorney Abney in having Johnson prepare the plats and survey work in question, the evidence clearly shows that attorney Abney actually did act for the benefit of his client Blalack in this respect and it is undisputed that Blalack had direct knowledge of and used Johnson's work and services for Blalack's direct benefit. Although Blalack denied the agency of Wright yet he mailed a letter enclosing an affidavit of Wright wherein Wright stated that he was employed by, or associated with Joe Blalack in the capacity of an agent. However, as held in Colbert v. Dallas Joint Stock Land Bank supra, even if Abney and Wright were without authority to employ or authorize Johnson to do the work for Blalack such would not place Johnson in the status of a mere volunteer nor would it deny to Johnson the right to recover from Blalack on a quantum meruit basis in view of the jury's findings, sufficiently supported by the evidence, that Johnson did the survey work in question, that Blalack used such work to his benefit and that Blalack knew that Johnson did such work expecting to be paid compensation therefor by Blalack.

■ Appellant also makes the further contention under his third point as follows: "The plaintiff having pleaded oral expressed contract is not entitled to recover on a quantum meruit basis."

Rule 48, T.R.C.P., reads as follows:

"A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based upon legal or equitable grounds or both."

In Johnson Aircrafts v. Eichholtz, Tex. Civ.App., 194 S.W.2d 815, 816, writ ref. N.R.E., the contention was made that "there cannot be an express contract and an implied contract with respect to the same thing or the same matter at the same time." The court after referring to Rule 48, T.R.C.P., stated: "As was said in Fant v. Andrews, Tex.Civ.App., 46 S.W. 909, 910: 'It is no objection that the plaintiffs sought to recover both upon an express contract and upon quantum meruit. They might allege both, and recover as the evidence might show.' Many other cases could be cited to the same effect." Also in this connection see the following authorities: 10 Tex.Jur., pp. 23 & 24; Etter v. Von Sternberg, Tex.Civ.App., 244 S.W.2d 321, wr. ref., n. r. e.; Travis v. Kennedy, Tex.Civ.App., 66 S.W.2d 444 error ref.; Broussard v. South Texas Rice Co., Tex. Civ.App., 120 S.W. 587, affirmed by Supreme Court in 103 Tex. 535, 131 S.W. 412.

Appellant's third point and each and all of his various contentions thereunder have been carefully considered and are respectfully overruled.

■ We also hold that there was evidence of probative force to sufficiently support the findings of the jury to special issues Nos. 3 and 6. Appellant's 4th point is respectfully overruled.

Appellant's remaining points have been carefully considered, are deemed to be without merit, and are respectfully overruled.

The judgment of the trial court is affirmed.

Affirmed.