**LUMBERMEN'S MUTUAL CASUALTY COMPANY et al., Appellants,**

v.

**Jefferson C. MEADE, Appellee.**

No. 3685.

Court of Civil Appeals of Texas.

Eastland.

March 23, 1962.

King, Willoughby & Vletas, Abilene, for appellants.

Bradbury, Tippen & Brown, Abilene, for appellee.

COLLINGS, Justice.

Great Central Insurance Company and Lumbermen's Mutual Casualty Company brought suit against Jefferson C. Meade for the recovery of $3,061.96, the amount of money alleged to have been wrongfully taken and withheld by the defendant. Great Central Insurance Company was the employer of the defendant who was an insurance selling agent for said company. Lumbermen's Mutual Casualty Company was the bonding company insuring Great Central Insurance Company for all forms of risk involving wrongful taking of premiums or money by agents or employees of said insurance company. The defendant Jefferson C. Meade invoked the provisions

of Vernon's Texas Rules of Civil Procedure, Rule 266 and admitted that the plaintiffs would be entitled to a combined judgment of $3,061.96 unless their right was defeated because of the allegations set out in his answer and cross action. Meade alleged that his indebtedness to the plaintiffs did not constitute a shortage but represented premiums collected by him for his employer insurance company for the current month being the month that his relationship with the company terminated. He further alleged that by reason of an agreement existing between himself and his former employer that he was entitled to recover for services and expenses a total sum of $6,600.00 and sought judgment therefor. In the alternative Meade sought to recover for such services and expenses on the theory of quantum meruit. The case was tried before a jury which (1) found the existence of an agreement between plaintiff Great Central Insurance Company and the defendant Meade whereby Meade was to investigate and settle claims for said plaintiff, (2) that under the agreement Meade was to be compensated for expenses, rent and personal services for investigating and settling such claims, (3) that from about May 1, 1953, until November, 1957, Meade rendered Great Central Insurance Company services investigating and settling claims, (4) that plaintiff insurance company accepted the benefit of such services and (5) that the reasonable value of such services and expenses incurred was $6,600.00. Based upon the verdict, judgment was rendered in favor of Jefferson C. Meade against Great Central Insurance Company for the sum of $3,538.04, which represents the excess over the amount that the defendant Meade was indebted to said plaintiff. Lumbermen's Mutual Casualty Company and Great Central Insurance Company have appealed.

 It is contended by appellants that (1) the court erred in overruling their motion for judgment notwithstanding the verdict, (2) that the verdict is contrary to the evidence in that the undisputed evidence shows that appellant Great Central Insurance Company did not either expressly or impliedly authorize any of its agents or employees to reimburse Meade for any agency expenses, nor did it grant them authority to enter into any new agency agreement with Meade, (3) that the court erred in submitting issue Number 2 and all other issues to the jury because the evidence shows there was no written amendment to the original agency agreement between appellant insurance company and Jefferson C. Meade, and particularly shows that no such written agreement was made by any proper authority of the insurance company, (4) that special issue number 5 should not have been submitted because it is not supported by evidence; that all evidence bearing on the amount of expenses of defendant Meade was self-serving, vague and indefinite, and that a remittitur of $3,600.00 should be made because the jury was influenced by sympathy and prejudice, and (5) that the court erred in entering judgment for interest in the amount of $742.98 because interest is not a proper item of damages in view of the fact that appellee Meade did not specifically plead that interest be awarded and that the sum in controversy was definitely an unliquidated sum and interest thereon was improper except from the date of judgment. In our opinion appellants' points are not well taken. The evidence supports the findings that there was an agreement between appellant Great Central Insurance Company and Meade whereby Meade was to investigate and settle claims for the company and that Meade was to be compensated for his necessary expenses, personal services and for rent.

The evidence is undisputed that appellee Jefferson C. Meade entered into an agreement with Great Central Insurance Company on November 1, 1951, to represent them in a twenty-two county area in the vicinity of Abilene, Texas. The contract was introduced in evidence by appellant, Great Central Insurance Company. Meade's authority under this agreement was limited

to the solicitation of insurance. The relationship of the parties continued under the original contract until the spring of 1953. Prior to that time, when there was a claim against the company, representatives from either McKinney or Austin, Texas, would be sent to handle the matter. When Meade began working for the company there were only a few policyholders in the territory assigned to him and the first month's collection of premiums was $69.00. Meade built up the business to such an extent that by the time he terminated his relationship with the company in 1957 there were several hundred policyholders and the monthly premiums had increased to approximately $3,000.00. Because of this increase in policyholders and comparable increase in claims and losses it was increasingly expensive and time consuming for the company to send men from McKinney and Austin to the Abilene area to adjust claims.

It is the contention of appellee Meade, and he gave testimony to the effect, that in the spring of 1953, Mr. F. A. Wilder, the state representative of appellant Great Central Insurance Company, who had commenced negotiations with appellee for his employment in 1951, again contacted appellee concerning whether or not he would settle claims up to $50.00. It is undisputed that at all times relevant hereto Wilder was State Sales Director for appellant insurance company. Wilder, as a witness for appellant insurance company, so testified. The evidence shows that Meade agreed to the suggestion that he should settle such claims and shortly thereafter the home office of the insurance company sent him authority to settle claims including instructions concerning how to handle claims and bank drafts to be used in payment thereof and agreed to reimburse him for necessary expenses incurred. Meade's testimony was to the effect that his authority to settle claims for the company was later increased permitting him to settle claims up to $100.-00. Following Meade's conversation with Mr. Wilder concerning the settling of claims Meade had a letter from the company about the matter. Meade indicated uncertainty concerning the representative of the company from whom the letter came but said that he presumed it was from Mr. Stout, the chief underwriter or chief claim adjuster in the home office.

Meade testified that he received a new contract from the company; that it was just like the first one except that it had an additional paragraph providing for additional duties of settling claims and paying them and allowing him additional pay for services rendered and reimbursement for expenses incurred. Meade stated that he signed the contract and sent it back to the company; that he did not have the contract or a copy of it in his possession; that when he was checked out by the company he turned all his records and papers over to the company and that nothing was ever returned to him; that he did not have and had never received a copy of his first contract with the company.

After these things had transpired, Meade purchased additional equipment, prepared a room in his home as an office, expended $30.00 to $60.00 a month on long distance telephone calls, did extra travel by motor vehicle and spent time in settling claims which otherwise he could and would have used in selling insurance. Meade stated that the new contract between him and appellant company was entered into in April or May of 1953; that such contract was like the one in 1951 with the added provision relative to settling claims and provided that Meade should be reimbursed for actual expenses plus the reasonable value of the time he used in adjusting and settling claims.

G. A. Hartnett, another witness for appellant, testified that he was an employee of the Great Central Insurance Company; that he had been with the company since 1946 and was head of the burglary claim department. He stated that he was authorized to grant "draft authority" to agents for the settlement of claims; that on request from the State Sales Manager and Regional

Manager, asking that an agent be granted draft authority, he would send a letter to the agent involved, stating the amount of his draft authority and accompany the letter with instructions about how to prepare drafts. Hartnett stated that he sent such a letter to appellee, Jefferson C. Meade, in 1953. Hartnett further testified, however, that the agency agreement between the company and Meade, dated November 1, 1951, was never amended to permit Meade the right to be reimbursed for his agency expenses.

The jury found and the evidence shows, without dispute, that appellant Great Central Insurance Company authorized Meade to settle claims and that Meade, in compliance with such authority, did render personal services and incurred expenses in investigating and settling claims from May 1953 until November of 1957. The jury found and the evidence is also undisputed that the company accepted the benefit of such services and expenses. The controversy involved is whether there is any evidence to show that appellant agreed to compensate Meade for such services and expenses, and specifically, whether any authorized agent of appellant insurance company, agreed that Meade should be compensated. The jury found that appellant did agree with Meade that he should be compensated therefor. The evidence in our opinion supports the finding. The circumstances justify the conclusion that the agreement to so compensate Meade was fully authorized by the company. Appellants' own witness Hartnett testified that he was head of the burglary claim department and was authorized to grant draft authority to agents for settlement of claims. He testified that he sent a letter to Meade in 1953, stating the amount of his draft authority with instructions concerning the settlement of claims and the preparation of drafts. Meade acted upon the agreement which he testified was made and under the authority which Hartnett granted and performed the services contemplated and incurred expenses in connection therewith.

■ The Great Central Insurance Company accepted the benefit of such services and expenses over an extended time. They were obligated to pay appellee the reasonable value of such services and expenses. Blalack v. Johnson, Tex.Civ.App., 293 S.W.2d 811; Musick v. Pogue, Tex.Civ.App., 330 S.W.2d 696 (Ref. N.R.E.); Johnson Aircrafts, Inc., v. Eichholtz, Tex.Civ.App., 194 S.W.2d 815. The facts and circumstances shown, in our opinion, also constitute evidence that there was an authorized written agreement to compensate Meade for such services and expenses.

There was ample evidence to support the finding of the jury that the reasonable value of the services rendered and expenses incurred by Meade in this connection was $6,600.00. The court did not err in submitting special issue number 5 to the jury.

■ We also overrule appellants' point urging that the court erred in entering judgment in favor of Meade for interest eo nomine. Art. 5070 V.A.T.C.S.

The judgment is affirmed.