David R. WEISBLAT and Henry Cohn, dba W. C. Investments, Appellants,

v.

OPEN ROAD CAMPERS, INC., Appellee.

No. 4973.

Court of Civil Appeals of Texas, Waco.

May 6, 1971.

Rehearings Denied May 27, 1971.

Berman, Fichtner & Mitchell, Harold B. Berman, Dallas, for appellants.

Clark, West, Keller, Sanders & Ginsberg, Jack Eades, Dallas, for appellee.

## OPINION

HALL, Justice.

Appellee leased some improved industrial property, located in Dallas County, from the owner, J. L. Williams & Co., Inc. The lease was for a term of five years, ending December 8, 1969, at a monthly rental of $2803.66. Appellants purchased the property from Williams & Co. in December, 1968, subject to appellee's rights in the premises.

Clause 16 of the lease granted appellee "an option to renew this lease for an additional term of five years, on the same terms and conditions contained herein, and at the same rental rate cited herein. In the event Tenant elects to exercise this option, Tenant agrees to deliver to the Landlord a new and duly executed lease for the period so optioned, no later than six months prior to the expiration date hereof; failure of Tenant to so deliver said new lease within the time limit specified will render this option agreement null and void and of no force and effect."

Appellee was granted an additional option to purchase the leased premises during the 60th month of the lease-term for the price of $360,000, provided that notice in writing to exercise the option was given to the owner-landlord not less than sixty days prior to the beginning of the 60th month of the term.

The lease provided that "any holding over by the tenant * * * after the expiration of this lease shall * * * be a tenancy from month to month only" at a monthly rental of $3,364.39.

On April 1, 1969, appellee's president sent a letter to appellants which made reference to the original lease and which, in part, stated:

"By copy of this letter please be informed Open Road Campers, Inc., exercises its option to renew said lease upon the same terms and conditions contained therein. This letter incorporates the original lease as a part hereof and this letter and the lease attached hereto will comprise the new lease as required by Clause 16.

"* * *

"In no way does the exercise of this option cancel or reduce in any manner Open Road Campers, Inc., option to purchase the property in question * * *."

Nothing was attached to, nor enclosed with, the letter.

On July 3, 1969, appellee's president, by telegram and letter to appellants, exercised the option to purchase the property for the consideration of $360,000.

There were discussions and negotiations between the parties after July 3rd regarding the lease renewal and option to purchase; and an agreement was reached for the parties to meet at the office of a title company on December 9th to close the sale. More negotiation at that time resulted in another setting for closing on December 12th. The sale was not closed on the 12th, and another setting was made for December 23rd. On the 23rd, appellee defaulted on its agreement to purchase. Meanwhile, on December 18th, appellants cashed what appellee contends was its December rental check in the regular monthly amount of $2803.66.

On December 31, 1969, appellants sent a letter to appellee stating that the lease agreement "expired by its terms on December 9, 1969," and that "we wish you to vacate these premises by February 9, 1970. Any rent due in the interim shall be at the rate of $3,364.39 per month, pursuant to the provisions * * * of the lease agreement." Appellants wrote another letter to appellee on January 23, 1970, stating, "we are returning to you your check received today in the amount of $2803.60, as rent for January, 1970 * * *. Please refer to our previous letter * * * that your holdover rent * * * equals $3,364.39. Therefore, your check cannot be accepted as full rent for the month of January, 1970. Please forward to us your check for $3,364.39 as your January rent. Also, we again reaffirm our notification to you to vacate these premises by February 9, 1970. * * *." In early February, 1970, appellee tendered appellants a check in the amount of $5,607.20, representing rent for January and February. The tender was refused, and soon thereafter litigation began between the parties.

Appellants brought this action seeking (1) possession of the premises, and (2) damages in the amount of $90,000 for breach of the contract to purchase, and (3) $3,364.39 as holdover rent for the period from January 9, 1970, to February 9, 1970, and (4) the sum of $4,472.91 as reasonable cash market rental value of the premises for each month the premises have been withheld by appellee since February 9, 1970.

It was appellee's position in the trial court, as it is here, (1) that its letter of April 1, 1969, met the requirements of Clause 16 of the lease and constituted an exercise of the lease renewal option, or (2) that appellants, by their actions and

acquiescence, have waived a compliance with Clause 16, and (3) that appellants suffered no damage as a result of appellee's breach of the contract to purchase.

Following trial without a jury, the court filed findings of fact and conclusions of law. Among others, the trial court concluded that appellee had duly exercised its option to renew the lease because its letter of April 1, 1969, "had the legal effect of incorporating by reference as a part thereof the original lease of the parties and met the requirements of clause 16 of the lease;" that appellants' "inaction and conduct from April 1, 1969, through December 31, 1969," constituted a waiver of strict compliance by appellee with the requirements of clause 16 of the lease for renewal; that after appellee exercised its option to renew the lease, the extended lease agreement was not intended to be, and was not as a matter of law, merged into the contract to purchase the property when appellee exercised its option to purchase. The court refused to make a finding requested by appellants as to damages allegedly suffered by them because of appellee's withholding possession of the premises from them.

Judgment was rendered granting possession of the premises to appellee "pursuant to the extended five-year term" lease agreement "commencing December 9, 1969."

In their first four points, appellants assign error to the conclusions of the trial court set forth above, and to the refusal of the court to make the requested finding. It is our opinion that the evidence is legally sufficient to support the court's findings and conclusions that appellants waived strict compliance with the provisions of the lease for its renewal by appellee, and that no merger of estates resulted when appellee exercised its option to purchase. This holding renders the remaining two of appellant's first four points immaterial, and all four are overruled.

■ Appellants call attention in their brief to the fact that appellee did not affirmatively plead waiver as required by Rule 94, Texas Rules of Civil Procedure. Appellants do not specify this complaint by point of error. Moreover, the record shows without question that extensive evidence of waiver was introduced on the trial without an objection of want of pleading. The matter was, therefore, tried by consent. At one point in the proceedings appellee's counsel proposed to offer evidence that "there had been a good deal of conversations and negotiations between the parties in terms of whether they were even going to go through and honor the option," and to show that the two options were treated independently of each other by the parties. Appellants' counsel objected on the ground that "we are going into evidence concerning offers of compromise, offers of settlement and compromise." The following colloquy was then held between the court and appellee's counsel without further objection or remark from appellants' counsel:

"The Court: Well, I think you can show all that if you are claiming waiver if they have asked you not to do it. If you are claiming they have waived their right, that the plaintiff has waived any rights here.

"Mr. Ginsberg, (attorney for appellee): Well, that was my purpose in showing it.

"The Court: Well, I will admit it. I think that would be admissible. * *."

■ Although waiver is an affirmative defense that ordinarily must be pleaded, when evidence of waiver is introduced on the trial without objection that it was not pleaded, then the want of pleading is waived. Phillips v. Woodard (Tex.Civ.App., 1957, writ ref., n. r. e.), 306 S.W.2d 229, 237.

Frederick C. Robin is appellee's executive vice-president, and, with the company's attorneys, represented appellee in its nego-

tiations with appellants. He stated that by the letter dated April 1, 1969, the company intended to renew the lease; and that the company intended to purchase the property when the option was exercised in July, 1969. He testified that in October or November, 1969, he and his attorneys met with the appellants and their counsel; that during the meeting "the plaintiffs offered to reduce the term of our lease if we would release them from their obligation on the option to purchase. They wanted to reduce it to a two-year period although they did state that they would not pressure us if we ran a little bit before or a little bit after that. They, in turn, also suggested if we wanted to stay there for a longer period of time, what would it take for us to do so? At that time I informed them that our problem was that the building as it was presently was a little antiquated * * *. So, they suggested that they might make certain alterations to the present building, and then by increasing the rent, that we might stay there for a longer period of time * * *. There were discussions and offers by the plaintiffs at that time and at that meeting agreeing that if (we) would drop the option to purchase the property, that they would consent to a reduction in the term of the five-year renewal lease. * * * No conclusive agreements were reached at that meeting. * * * At the December 9th meeting * * * the plaintiffs made a proposal to me to pay the company $5,000 in the event the company would drop its option to purchase the property. (We) countered with a proposal that the company would accept $10,000 and drop the option. The plaintiffs indicated they would like to consider that proposition. On this occasion no statements were made by the plaintiffs contesting the renewal term of the lease in the event a settlement was reached respecting the dropping of the option to purchase. On the contrary, they were talking about reducing the term of the lease. They asked us how long we intended to remain, and we told them we didn't know under the present conditions. However, at that time, we intended to stay for awhile and didn't know how long." On cross-examination, he testified that he knew that the company, having exercised its option of renewal, was bound to remain for five more years, and pay the rent for that term, if the option to purchase was dropped. He said that following the lease renewal in April, 1969, no official of his company received any notification of any nature from the appellants indicating that the lease had not been renewed, until the letter of December 31, 1969; and that, to the contrary, in the discussions between the parties, the plaintiffs made inquiry as to whether the term of the new lease could be shortened. He testified that he was "quite surprised" when appellants returned appellee's check for the January, 1970 rent. He stated that he was prepared to close the purchase transaction on December 9th, but that the closing was postponed until December 12th to give appellants an opportunity to consider appellee's counter-offer of accepting $10,000 to drop the option to purchase; that before the meeting on the 12th he knew that appellants had declined the counter-offer; and that on December 12th, the parties mutually agreed to postpone the closing until December 23rd. He admitted that appellee breached its agreement to purchase the property.

Both appellants stated that in their discussions with appellee's representative they never indicated a belief that the lease had not been renewed. The appellant Cohn testified that he was "under the impression" after April 1, 1969, that appellee "had in fact renewed its lease for a five-year term." He said, "The letter I received from them was placed in the file, a copy to Mr. Weisblat, and that's as far as I go with it. * * * I assumed they had taken care of it properly." Mr. Weisblat verified Mr. Robin's testimony that a discussion had been held in which he told Mr. Robin that the appellants would be willing to make some improvements to the building, with an increase in rent as consideration. He was asked, "Do you recall

inquiring as to just how long they might require the use of the property?" He answered, "It is possible we discussed this based on the fact that they indicated at that time that they weren't—that they had—that they didn't have use for the property for the full five years as far as their own plans were concerned." Other testimony of Mr. Weisblat can be reasonably interpreted as expressing a belief on his part that the lease was renewed by appellee's letter of April 1st, but that he now believed the lease renewal was terminated when appellee exercised its option to purchase.

The appellant Weisblat and appellants' expert witness on valuation both testified as to the value of the property on December 23, 1969. Their testimony in this regard was based upon the assumption that the lease had been extended for a new term of five years. Appellants offered other proof that the extension of the lease would depress the market value of the property below $360,000, on December 23, 1969, thus showing an alleged damage to them as a result of appellee's breach of the contract to purchase. Appellants sought the advantage of this testimony in the trial court, and they do so here.

■ Waiver is a matter of intention, and is a question of fact where it is a matter of inference from the record. Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855, 865 (1958). There, the court held:

"A waiver takes place where one dispenses with the performance of something which he has a right to exact, and occurs where one in possession of any right, whether conferred by law or by contract, with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure or forbearance to do which is inconsistent with the right of his intention to rely upon it."

■ Here, appellants had an initial right to require appellee to deliver to them a new lease agreement for the extended five-year term in order to effect the option for lease renewal. Nevertheless, we are convinced, and hold, that the following facts support the trial court's findings and conclusion of waiver, and manifest an intention on the part of appellants to not require the execution of a new lease agreement by appellee: (1) both appellants expressed the belief that appellee's letter of April 1st sufficiently effected a renewal of the lease, although Mr. Weisblat indicated he thought the renewal ended with the exercise of the option to purchase; (2) after appellee gave notice of intent to purchase, (a) appellants offered to make improvements to the building for appellee provided there was an increase in rent during the new term; and (b) they offered to reduce the renewal term from five to two years in exchange for appellee's option to purchase; (3) other discussions were had with appellee's representatives by appellants toward shortening the term of the new lease; (4) appellants did not suggest by action or word in any of the discussions that the lease had not been renewed, but, instead, treated the lease as extended; (5) after the original term had ended, appellants accepted a new months' rental payment from appellee which was tendered in the regular amount rather than the "holdover" amount; (6) in tendering evidence of the value of the property as of December 23, 1969, after the original lease-term had ended, appellants and their valuation witness based their testimony of value on the assumption that the lease had been renewed, in an effort to increase appellants' alleged damages resulting from appellee's breach of the agreement to buy the premises.

■ The doctrine of merger of estates does not apply in any case where it is the intention of the parties that it should not do so. Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S.W. 296, 302 (1923). The evidence we have recited shows that the parties treated the lease renewal and the contract to purchase separately in their

**906**

dealings after the options had been exercised by appellee; and it amply supports the finding and conclusion of the court that the extended lease agreement was not intended to be merged, and did not merge, into the contract to purchase.

The trial court found that appellants were damaged $12,000 as a result of appellee's breach of its agreement to purchase the premises for $360,000, and rendered judgment for appellants for that amount. Appellants, by their fifth point of error, and appellee by its cross-point, contend that this finding is against the great weight and preponderance of the evidence. We agree. No benefit could result from a recitation by us of the extensive testimony in the record of the alleged market value of the property upon which the court was required to base the finding in question, and we refrain from doing so.

Rule 434, Texas Rules of Civil Procedure, provides that if it appear on the appeal of a case that the error of the trial court affects a part only of the matter in controversy, and the issues are severable, then the judgment shall only be reversed and a new trial ordered as to that part affected by such error.

In our opinion the question of damages allegedly sustained by appellants because of appellee's breach of the contract of purchase is severable from the other matters in controversy, and it is ordered that it be severed therefrom. See Tex.Jur.2d 459, Appeal and Error—Civil, Sec. 874.

That portion of the judgment awarding $12,000 damages to appellants as a result of appellee's breach of its contract to purchase the property is reversed, and the question of the amount thereof is remanded to the trial court; in all other respects the judgment is affirmed.

The costs are assessed 75% against appellants and 25% against appellee.